## GRAVELLE et al. v. POLLOCK STORES CO.

No. 17350.    Opinion Filed April 3, 1928.

Rehearing Denied May 22, 1928.

(Syllabus.)

**1. Frauds, Statute Of—Oral Promise to Pay for Goods Furnished Another.**

Where a party orally promises to pay for goods furnished another, and the credit is extended to the promisor, the oral contract does not fall within the statute of frauds. If the agreement, however, was that he should only be collaterally liable and pay only in case of default of the party to whom the goods were furnished and to whom credit was extended, then such parol contract falls within the statute of frauds and is void.

**2. Same—Whether Promise Direct or Collateral as Question for Jury.**

The question of whether or not the promise of the person sought to be bound is direct or collateral is a question to be submitted to the jury unless, under all the testimony, all reasonable persons must reach the conclusion that the liability was collateral and not direct.

**3. Same—Judgment Against Promisors Sustained.**

Record examined, and held, sufficient to support the judgment of the trial court.

Error from County Court, LeFlore County; Grover Flanagan, Judge.

Action by the Pollock Stores Company, a corporation, against E. E. Gravelle and W. H. Hamblin, partners, doing business under firm name of Gravelle & Hamblin. Judgment for plaintiff, and defendants bring error. Affirmed.

Stone, Moon & Stewart and White & Reid, for plaintiffs in error.

DuBois & Harper and Varner & Taylor, for defendant in error.

HEFNER, J. The Pollock Stores Company sued Gravelle and Hamblin on an open account. The defendants were engaged in the construction of a hard-surfaced road and A. W. Scott was a subcontractor on a portion of the construction work. The plaintiff alleged that the defendants, in company with A. W. Scott, came to its place of business and instructed it to furnish goods for the purpose of aiding in the construction of the highway to the order of A. W. Scott and that the defendants agreed to stand responsible for the payment of the goods; and that the instructions were oral. Upon such request the plaintiff furnished to A. W. Scott merchandise in the aggregate sum of $821.82. The itemized statements were attached as exhibits to the petition and made a part of it. The exhibits consisted of 13 separate statements. The first one, in the sum of approximately $34, was charged as follows: "A. W. Scott c/o Gravelle & Hamblin. In account with Pollock Stores Company." The other 12, constituting the balance sued for, were charged as follows: "A. W. Scott, In account with Pollock Stores Company."

The defendants denied that they requested the plaintiff to furnish merchandise to A. W. Scott; and also denied that they agreed to stand responsible for the payment of the same. They made the further defense that if they had made the agreement as alleged by plaintiff, the same was unenforceable by reason of subdivision 2 of section 5034, C. O. S. 1921, which, in substance, provides that a promise to answer for the debt of another is invalid unless the same or some memorandum thereof be in writing and subscribed by the party to be charged or by his agent.

On the case being submitted to the jury, a verdict was returned by it against the defendants for the full amount sued for and judgment was entered by the court in accordance with the verdict. From which judgment, the defendants have appealed to this court.

If the plaintiff extended the credit to the

defendants and not to A. W. Scott, the judgment of the trial court should be affirmed. If, on the other hand, the credit was extended to A. W. Scott and the defendants agreed to guarantee the payment of the merchandise sold to him, then the contract falls within the statute of frauds and cannot be enforced, and, if this be true, the court should have instructed the jury to return a verdict for the defendants.

If the debt was not a direct obligation of the defendants, but a promise by them to stand responsible therefor, then the same was unenforceable by reason of the statute of frauds, because the same was oral and not in writing.

In testifying about the arrangements for the credit, Mr. Pollock, the owner of the store, testified in part as follows:

"Q. Did he tell you he would pay for it then? A. He told me he would be responsible for it. Q. He told you he would be responsible for it? A. Yes, sir. Q. What do you mean by responsible? A. That is the word he said. * * * Q. They (meaning the merchandise) were charged to Scott? A. Yes, sir."

Further light is thrown on the original agreement in a letter that was written by Mr. Pollock to the defendants about the time the dispute came up over the Scott account. A portion of it is as follows:

"* * * On the other hand, if you intended to say to our Mr. Metz that you did not guarantee this account, I must remind you that you did. * * * Now, if there is to be any question at all about the guarantee, I trust that you will make yourself clear right now and should we differ as to the conversation you had with me, we might as well let the courts decide now as later."

Mr. Metz, who testified for the plaintiff and was its bookkeeper, in his testimony used this language:

"No. He told me before that they (Gravelle & Hamblin) stood behind this account, and Scott told me they owed him enough money to pay that. * * * In other words, he (meaning Mr. Pollock) told me this: that Gravelle would see that it was paid, and as a matter of fact we charged Scott's to Scott, Richardson's to Richardson, and Moots' to Moots, so as to keep a different account with all the contractors." (C. M. 51.)

The defendants assign as error the court's refusal to instruct the jury to return a verdict in favor of the defendants.

The syllabus in the case of Cales v. Gray, 105 Okla. 54, 231 Pac. 300, is as follows:

"Where one person orally assumes an obligation to pay a debt created by a benefit extended to another, if such oral contract creates an original liability on the part of such promisor and credit is extended to him, such contract does not fall within the statute of frauds. If the intention of the parties, however, was that the promisor should only be collaterally liable, and pay only in case of default of the person receiving the benefit to whom credit was extended, then such parol contract would be within the statute of frauds and void.

"Ordinarily the question whether or not the promise of the person sought to be bound is direct or collateral is a question to be submitted to the jury, but where under all the testimony all reasonable persons must reach the conclusion that the liability was collateral, a demurrer to the testimony of the plaintiff should be sustained by the court."

The plaintiff did not charge the goods to the defendants, but charged them to A. W. Scott. This in itself is an indication that the original credit was extended to Scott and not to the defendants. Mr. Pollock, when testifying about the arrangements for the account of A. W. Scott, testified that the defendants said they would be "responsible" for the payment of the account. He was then asked, "What do you mean by responsible?" His answer was, "That is the word he (meaning the defendant) used."

In the letter that Mr. Pollock wrote to the defendants he stated that they had "guaranteed" the account. "Guarantee" in its common acceptation is understood to mean an undertaking to answer for the payment of some debt, or the performance of some duty, of another, in the case of the failure of such other to pay or perform. Cochran's Law Lexicon defines "guarantee" as, "A promise to a person to be answerable for the payment of a debt, or the performance of a duty by another, in case he should fail to perform his engagement. It may be for a single act, or be a continuing guaranty, covering all transactions of like kind and to a like amount until revoked by the guarantor."

The evidence is convincing that the credit was extended to A. W. Scott and that the defendants guaranteed the payment of the merchandise sold to him. While the evidence is thus convincing, it cannot be said that under all the testimony all reasonable persons must necessarily reach the conclusion that the original credit was extended to Scott and not to the defendants. Ordinarily the question of whether or not the promise of the person sought to be bound is direct or collateral is a question to be submitted

to the jury. Since it cannot be said that all reasonable persons must reach the conclusion that the original credit was extended to Scott and not to the defendants, it was the duty of the court to submit to the jury for their determination the question as to whether or not the obligation of the defendants was direct or collateral. The court did submit this question to the jury, under proper instructions, and it found that the obligation of the defendants was direct and not collateral. We do not think we should disturb the finding of the jury on this question.

The defendants urge that the demurrer to the plaintiff's petition should have been sustained. The petition alleges that the defendants came to the place of business of the plaintiff in company with A. W. Scott and instructed the plaintiff to furnish goods for the purpose of aiding in the construction of the highway to the order of A. W. Scott and that they, the defendants, would stand responsible for the payment of the goods so furnished; and that said request and instruction was oral. To obviate any question as to the sufficiency of the petition on demurrer, the petition should have alleged that the credit was extended to the defendants and that they were directly liable therefor.

The petition alleged that the defendant stated they would be "responsible" for the payment of the goods. One of the meanings of the word "responsible" is to be able to respond or answer for one's conduct ·or obligations. Attributing this meaning to the word, the petition must be held to be good on a general demurrer.

We think the allegation in the petition is broad enough to include an original obligation on the part of the defendants to pay for the goods. When a customer says to a merchant, "I will stand responsible for the payment of the goods", probably most people would understand, by the expression, that the customer agreed to pay for the goods. While the word "responsible" has many different meanings when used in different connections, yet it is certainly susceptible of this meaning. Under this allegation the plaintiff could have charged the goods directly to the defendants and looked directly to them for payment. We do not think the trial court committed error in overruling the defendants' demurrer to the petition.

For reversal, the plaintiffs in error next urge that the account sued on was not proved by any competent evidence. The plaintiff's ledger, showing the account, was introduced in evidence, but the defendants contend that it was not competent. Section 653, C. O. S. 1921, is as follows:

"Entries in books of account may be admitted in evidence, when it is made to appear by the oath of the person who made the entries, that such entries are correct, and were made at or near the time of the transaction to which they relate, or upon proof of the handwriting of the person who made the entries, in case of his death or absence from the county, or upon proof that the same were made in the usual course of business."

Mr. Metz, the bookkeeper for the plaintiff, testified that the book introduced in evidence was the book of permanent record and that it was the book of original entry of accounts and was made up from the sales tickets and that the sales tickets are not a permanent record. It may be that this testimony alone would not be sufficient to bring this testimony within the rule stated in the statute above quoted. Scott was also called as a witness. The statement of the account had been given to him, and while he was not positive in his testimony, he did state that it looked to him like he got everything named in the account. It seems to us that the evidence of plaintiff's bookkeeper, aided by that of A. W. Scott, who purchased the goods, is sufficient to make the accounts admissible in evidence.

The judgment of the trial court is affirmed.

BRANSON, C. J., MASON, V. C. J., and HUNT and CLARK, JJ., concur. RILEY, J., dissents.

Note.—See under (1) 27 C. J. p. 130, §15; anno. 15 L. R. A. (N. S.) 215; 25 R. C. L. pp. 488, 489; 4 R. C. L. Supp. p. 1591. (2) 27 C. J. p. 390, §491; 15 L. R. A. (N. S.) 216; 25 R. C. L. p. 490; 4 R. C. L. Supp. p. 1591; 5 R. C. L. Supp. p. 1332. (3) 27 C J.. p. 385, §479.