2001 OK 11

**Ralph FEHRING and Dorothy Fehring, Plaintiffs/Appellants,**

v.

**STATE INSURANCE FUND, Defendant/Third Party Plaintiff/Appellee,**

and

**Crawford & Company, Third Party Defendant.**

No. 92,828.

Supreme Court of Oklahoma.

Feb. 6, 2001.

Rick W. Bisher of Boettcher, Ryan & Martin, Oklahoma City, Oklahoma for Appellants.

Jeff L. Hartman, Oklahoma City, Oklahoma for Appellee.

LAVENDER, J.

¶ 1 We decide whether the Governmental Tort Claims Act (GTCA), 51 O.S.1991, § 151 et seq., as amended, immunizes appellee, State Insurance Fund (SIF), from liability for the alleged post-award bad faith conduct of failure to timely pay a workers' compensation award. Like the trial judge, who gave summary judgment to SIF based on GTCA immunity, and the Court of Civil Appeals (COCA) that upheld the immunity, we hold SIF is entitled to GTCA immunity.

¶ 2 In addition, we must decide if a majority of the COCA panel erred by going on to rule SIF was still amenable to suit in contract and subject to liability for the same damages potentially recoverable in tort, but for the GTCA immunity. As to this ruling, we hold the COCA majority erred. The damages recoverable under a tort theory of liability for breach of the implied duty of good faith and fair dealing are not coextensive with damages recoverable under a contractual theory. Further, to allow appellants, Ralph Fehring (injured worker) and Dorothy Fehring (spouse) to proceed on a contractual theory would thwart and/or eviscerate the exclusivity provisions of the Oklahoma Workers' Compensation Act (WCA), 85 O.S.1991, § 1, et seq., as amended.[1] Simply, appellants may not avoid the GTCA immunity provided to SIF merely by recasting their tort theory of liability into a contractually-based one. Thus, the COCA majority erred by reversing in part the trial court judgment and remanding for further proceedings. Instead, the trial court judgment should have been affirmed because, as the trial judge

ruled, SIF was entitled to summary judgment.

## PART I.  STANDARD OF REVIEW.

¶ 3 Summary judgment is reviewed de novo [Carmichael v. Beller, 1996 OK 48, 914 P.2d 1051, 1053] because the ultimate decision turns on purely legal determinations, i.e. whether a party is entitled to judgment as a matter of law because no material disputed factual questions exist.  Id. An appellate court, like a trial court, examines the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact.  Id. Just as in the trial court, all inferences and conclusions drawn from the evidentiary materials are viewed in a light most favorable to the non-moving party.  Id. The de novo review is a plenary, independent and non-deferential re-examination of the trial court's ruling.  Manley v. Brown, 1999 OK 79, ¶ 22 f.n. 30, 989 P.2d 448.  Here, de novo review shows no material disputed facts precluding summary judgment in favor of SIF.

## PART II. FACTUAL RECORD AND PROCEDURAL HISTORY.

¶ 4 Appellants sued SIF for bad faith failure to timely pay a workers' compensation award.  Their petition, in effect, alleged: 1) by order, an Oklahoma Workers' Compensation Court (WCC) judge awarded Mr. Fehring permanent partial disability benefits; 2) the order became final and was not timely paid by SIF-employer's workers' compensation insurer; 3) another WCC order issued because of the failure to timely pay the first order; 4) the second order became final and SIF failed to timely pay amounts due under it;  and 5) SIF's failure to timely pay was in bad faith, entitling appellants to damages for emotional distress, pain, suffering and detriment to their economic status.[2]

1. Although the record does not expressly show that appellant, Dorothy Fehring is appellant, Ralph Fehring's spouse, we make that assumption.  We note to having no occasion here to delineate the circumstances, if any, in which the spouse of an injured worker would have a viable claim—in tort or contract outside the confines of the Oklahoma Workers' Compensation Act,

(WCA), 85 O.S.1991, § 1, et seq., as amended—against the worker's employer's workers' compensation insurer for failure to timely pay a workers' compensation award.

2. Appellants' petition also asserted the failure of appellee, State Insurance Fund (SIF) to authorize medical treatment for Mr. Fehring was

¶ 5 SIF"s answer to the petition, in effect, denied any bad faith conduct and pled affirmative defenses unnecessary for us to detail.[3] It then moved for summary judgment, relying on the interplay between 1) the necessity for appellants to prove bad faith conduct on the part of SIF employees in failing to timely pay the award to have a viable claim for breach of the implied duty of good faith and fair dealing, and 2) the GTCA requirement that a State agency may only be held liable for the torts of its employees committed within the scope of their employment—the GTCA definition of "scope of employment" including a requirement the employees acted in good faith. 51 O.S. Supp.1994, § 152(9)[now 51 O.S. Supp.2000, § 152(9)].[4]

¶ 6 Appellants responded to the summary judgment quest by asserting SIF was not a State entity covered by the GTCA. They also argued, in effect, the "bad faith" conduct required to be shown by an insured to recover for an insurer's breach of the implied duty of good faith and fair dealing is not the opposite of the "good faith" required to have a viable tort suit against a State agency under the GTCA. In essence, they argued a "bad faith" claim against a workers' compensation insurer is viable without showing some malicious or reckless conduct on the part of the insurer's employees.

¶ 7 The trial judge ruled SIF was covered by the GTCA and it was impossible to prove **both** a valid claim of bad faith failure to timely pay the compensation award **and** that SIF employees acted in good faith within the scope of their employment. He gave sum-

mary judgment to SIF based on GTCA immunity. Appellants appealed.

¶ 8 All three judges of the COCA division handling the appeal agreed SIF was entitled to GTCA immunity. However, a majority held, *sua sponte*, SIF was still subject to suit on a contract theory and potentially liable for the same damages potentially recoverable in tort, but for the GTCA immunity. One judge dissented from the latter ruling(s), thinking it improper to address the issue(s) because appellants had not sought recovery in contract or, on appeal, alleged trial court error as to any contract claim. He also believed the WCA set forth the proper remedial methodology for enforcing a workers' compensation award not paid in a timely manner.

¶ 9 Both appellants and SIF sought certiorari—appellants as to the immunity ruling; SIF as to the reversal and remand to allow appellants to proceed on a contractually-based theory of liability. We granted both petitions for certiorari.

**PART III. THE GTCA PROVIDES IMMUNITY TO SIF FOR ANY POST AWARD BAD FAITH CONDUCT OF ITS EMPLOYEES OF FAILING TO TIMELY PAY A WORKERS' COMPENSATION AWARD.**

**A. SIF IS A STATE ENTITY COVERED BY THE GTCA.**

¶ 10 The issue of whether SIF is a State entity covered by the GTCA is a first impression question.[5] A review of pertinent GTCA provisions, statutes creating SIF, other relevant statutes and our prior case law

wrongful. We also note, the appeal record does not contain copies of the Workers' Compensation Court orders or conclusively show the length of delay in paying benefits due under the orders. We need not know the exact content of the orders or the particular circumstances of the failure to timely pay to reach a correct disposition.

3. SIF also sued Crawford & Company (C & C) by a third-party petition, asserting it hired C & C in August 1996 to administer Mr. Fehring's workers' compensation claim. Basically, SIF asked for judgment against C & C for any SIF liability found to exist in favor of appellants for bad faith conduct occurring after C & C took over handling the compensation claim.

4. Section 152 of the Governmental Tort Claims Act (GTCA), 51 O.S.1991, § 151 et seq., as amended, was amended by 2000 Okla. Sess. Laws, Ch. 59, § 2, in a way not material to our disposition. Subsection 9 of § 152 remained unchanged.

5. In that *McGehee v. State Insurance Fund,* 1995 OK 85, 904 P.2d 70 held a worker's tort claim against SIF (employer's workers' compensation carrier) for bad faith denial of a compensation claim was untimely under **either** the one-year notice of loss provision found at 51 O.S.1991, § 156(B) of the GTCA **or** the two-year tort limitation period found in 12 O.S.1991, § 95, it was unnecessary to address the issue of whether SIF was a State entity covered by the GTCA.

lead to the conclusion it is a State entity intended to be covered by the GTCA, notwithstanding the fact SIF has certain characteristics of a private insurance carrier. The GTCA defines "agency" as: "[ ] any board, commission, committee, department or other instrumentality or entity designated to act in behalf of the state or a political subdivision[.]" 51 O.S. Supp.1994, § 152(2)[now 51 O.S. Supp.2000, § 152(2) ]. State is defined in the GTCA as: "[ ] the State of Oklahoma or any office, department, agency, authority, commission, board, institution, hospital, college, university, public trust created pursuant to Title 60 of the Oklahoma Statutes of which the State of Oklahoma is the beneficiary, or other instrumentality thereof[.]" § 152(10).

¶ 11 SIF's purpose, powers, duties and structure are primarily set out in 85 O.S. 1991, § 131 et seq., as amended—part of our workers' compensation laws. It was created by 1933 legislation [*O.K. Constr. Co. v. Burwell*, 1939 OK 248, 93 P.2d 1092, 1093] to satisfy the need for workers' compensation insurance for employers unable to procure coverage from private insurance companies and in high risk industries. *Moran v. State ex rel. Derryberry*, 1975 OK 69, 534 P.2d 1282, 1284. Today, SIF's general purpose is simply to insure employers against liability for workers' compensation claims and to assure employees entitled to benefits under our workers compensation laws that they receive such benefits through the insurance. 85 O.S. Supp.1995, § 131.[6] SIF provides such insurance to both private and public employers. Also, SIF's governing statutes plainly indicate, although it is to be fairly competitive with private insurance carriers providing such insurance, SIF is generally a non-profit endeavor [§ 131(c) ], and its ability to decline to insure an employer for purposes of the

employer's workers' compensation liability is restricted. 85 O.S. Supp.1996, § 134(A)(2).

¶ 12 Supervision over administration/operation of SIF is conducted by a Board of Managers. 85 O.S. Supp.1996, § 131a. The nine Board members are: Director of State Finance or a designee; Lieutenant Governor or a designee; State Auditor and Inspector or a designee; Director of Central Purchasing of the Department of Central Services; and five other members-one appointed by the Governor and two each by the Speaker of the Oklahoma House of Representatives and the President Pro Tempore of the Oklahoma Senate. The members are entitled to reimbursement for proper expenses under the State Travel Reimbursement Act, 74 O.S. 1991, § 500.1 et seq., as amended. § 131a(C).

¶ 13 Day-to-day management is handled by the State Insurance Fund Commissioner, whom the Board of Managers appoints. 85 O.S.1991, § 131b and § 132; § 134. The Commissioner is expressly recognized as a state officer or employee for purposes of the surety bond required by 74 O.S. Supp.1994, § 85.29, part of the Oklahoma Central Purchasing Act (OCPA), 74 O.S.1991, § 85.1 et seq., as amended. The Oklahoma Attorney General has opined that SIF is a State agency for purposes of the OCPA. Okl. A.G. Opin. No. 88–61, 20 Okl. Op. Atty. Gen. 142, 1988 WL 424296 (Okl.A.G.).[7]

¶ 14 The operational expenses of SIF and the payment of compensation awards to injured workers are funded through premiums charged to covered employers and any investment income received by SIF. § 131(a) & (b). All money received by SIF (except investment income) is deposited in the SIF fund in the State Treasury. 85 O.S. Supp. 1994, § 135(A).[8] SIF's administrative ex-

---

**6.** SIF is also authorized to offer malpractice insurance for health care providers in certain circumstances by 76 O.S.1991, § 22.

**7.** The Oklahoma Central Purchasing Act (OCPA) defines "State agency" as: "[ ] any office, officer, bureau, board, counsel, court, commission, institution, unit, division, body or house of the executive or judicial branches of the state government, whether elected or appointed, excluding only political subdivisions of the state[.]" 74 O.S. Supp. 2000, § 85.2(32). When Okl. A.G. Opin. No. 88–

61 issued, the OCPA defined "State agency" or "agency" in an almost identical fashion, the only difference being the last phrase read: "excluding only municipalities, counties and other governmental subdivisions of the state." 74 O.S. Supp. 1986, § 85.2(1).

**8.** Investment funds and revenues are to be placed with a bank or trust company offering master custodial services. 85 O.S. Supp.2000, § 138(G). Authorization exists to transfer monies used for investment purposes from the SIF

penses are required to be paid on warrants issued by the State Treasurer against claims filed as prescribed by law with the State Finance Director. 85 O.S. Supp.1997, § 139. The Finance Director is also responsible for prescribing all forms, systems and procedures for administering SIF's petty cash fund. 85 O.S.1991, § 135.1.

¶ 15 Title 74 O.S. Supp.1994, § 840–5.10(A)—part of the Oklahoma Personnel Act (OPA), 74 O.S. Supp.1994, § 840–1.1 et seq., as amended-provides that SIF shall be under the Oklahoma merit system, a part of the OPA; generally its employees are in the classified State service; and § 840–5.10(B) sets out those offices, positions and personnel employed by it that shall be in the unclassified service. In other words, by statute SIF employees are considered State employees.[9] A law concerning State government [74 O.S. Supp.1999, § 3601(B) ] sets the maximum annual salary of the SIF Commissioner, as well as the maximum number of SIF employees.

¶ 16 The Oklahoma Attorney General has opined that SIF is an "agency" of the State under the OPA [Okl. A.G. Opin. No. 95–36, 25 Okl. Op. Atty. Gen. 83, 1995 WL 647525 (Okl.A.G.) ] which defines "agency" as: "[ ] any office, department, board, commission or institution of the executive branch of state government[.]" 74 O.S. Supp.1999, § 840–1.3(1).[10] After Opin. No. 95–36, legislation was enacted exempting SIF from an OPA hiring freeze provision, but no legislation was passed generally exempting it from the OPA's terms. 1996 Okla. Sess. Laws, Ch. 363, § 17; 74 O.S. Supp.1996, § 840–2.14(D).

¶ 17 Although this Court has recognized that generally the funds of SIF are not State funds[11], but are trust funds held for the benefit of the employers/employees protected by the insurance issued by SIF to provide coverage in conformity with our workers' compensation laws [*Moran v. State ex rel. Derryberry, supra* ], the Court has, nonetheless, unequivocally held SIF is a department of the State, over which the State, through legislative enactment, wields absolute control of its functions, powers and duties. *O.K. Constr. Co. v. Burwell, supra,* 93 P.2d at 1094. *Burwell* held SIF was a State of Oklahoma department for purposes of exempting State entities from posting an appeal bond under what is now 12 O.S. Supp.1999, § 66.[12]

¶ 18 We also note SIF is charged with administration and protection of the Multiple Injury Trust Fund (MITF) [85 O.S. Sup. 1999, § 175; *Special Indemnity Fund v. Barnes,* 1967 OK 216, 434 P.2d 218, 220], formerly known as the Special Indemnity Fund. 85 O.S. Supp.2000, § 173. The Special Indemnity Fund Act, passed in 1943 [*Special Indemnity Fund v. Archer,* 1993 OK 14, 847

fund in the State Treasury to the custodian bank or trust company. 85 O.S. Supp.1994, § 135(A).

9. The Oklahoma Personnel Act (OPA) defines "classified service" as: "[ ] state employees and positions under the jurisdiction of the Oklahoma Merit System of Personnel Administration [OMSPA]" and "unclassified service" as: "[ ] employees and positions excluded from coverage of the [OMSPA.]" 74 O.S. Supp.1999, § 840–1.3(6) and § 840–1.3(26).

10. The OPA contained an identical definition of "agency" when Okl. A.G. Opin. No. 95–36 was issued. 74 O.S. Supp.1994, § 840–1.3(1).

11. In fact, 85 O.S. Supp.1995, § 131 expressly provides that there can be no liability upon the State beyond the amount of the SIF fund.

12. 12 O.S. Supp.1999, § 66 provides:

A. Whenever an action is filed in any of the courts in this state by the State of Oklahoma, or by direction of any department of the state, no bond, including cost, replevin, attachment, garnishment, redelivery, injunction, appeal, or other obligation of security shall be required from the state or from any party acting under the direction of the state, either to prosecute, answer or appeal the action. In case of an adverse decision, such costs as by law are taxable against the state, or against the party acting by its direction, shall be paid out of the funds of the department under whose direction the proceedings were instituted; provided, that the court shall direct the nonprevailing party to pay all costs of the action in the final order of the court.

B. Costs shall be paid to the court fund of the district court in which an action is filed from the first funds collected in satisfaction of any judgment obtained by this state or any party acting under the direction of this state, except when the funds are collected pursuant to a child support order or judgment. No action filed by this state or by any party acting under the direction of this state shall be dismissed without the prior notification of the district court clerk of the county in which the action was filed.

P.2d 791, 794], shifted the burden of paying the additional permanent disability due to the fact an injured employee was a physically impaired person from the employer or his insurance carrier to the MITF. *Special Indemnity Fund v. Davidson*, 1945 OK 287, 162 P.2d 1016, 1017–1018.[13]

¶ 19 As stated above, SIF is generally funded through premiums paid by employers to which SIF issues workers' compensation insurance policies.[14] The MITF is funded differently. Currently, the MITF is generally funded by 1) payments from SIF and other insurers writing workers' compensation insurance, the payments based on a percentage of the total gross direct premiums written for workers' compensation risks located in Oklahoma and 2) payments by own-risk employers and group self-insurance associations, the payments based on a percentage assessment of the total compensation for permanent total and partial disability, and death benefits, paid out during each calendar year quarter by said employers and associations. § 173(A). The payments are made to the Oklahoma Tax Commission [§ 173(A) & (C) ], then remitted to the State Treasurer for proper disposition. A portion of the funds go to the Attorney General's Workers' Compensation Fraud Unit Revolving Fund; the Oklahoma Department of Labor for safety consultation and public employee safety regulation; and the State Department of Vocational and Technical Education; as well as to the MITF. § 173(G). The MITF is also authorized to receive and expend monies appropriated by the Legislature [§ 173(B) ] and has received direct legislative appropriation of funds. 1988 Okla. Sess. Laws, Ch. 119, § 15 ($1.5 million appropriated from General Revenue Cash-flow Reserve Fund).[15]

¶ 20 Although the funds obtained by SIF in regard to workers' compensation insurance policies issued by it and funds administered on behalf of the MITF are generally kept separate, the fact SIF administers the MITF cannot be wholly discounted for purposes of deciding if SIF is a State entity covered by the GTCA. Further, though the record does not indicate appellants are suing SIF in its capacity as the MITF administrator, or that they seek funds from the MITF, the fact it administers the MITF, in our view, is relevant to SIF's GTCA status. Plainly, its position as the MITF administrator provides support for the view SIF was intended by the Legislature to be included within the definition of a State "agency" under the GTCA. At a minimum, as the MITF administrator—the MITF being a fund receiving legislative appropriation(s)—there can be no question it acts in behalf of the State.

¶ 21 Further, although *State ex rel. State Insurance Fund v. Bone*, 1959 OK 135, 344 P.2d 562 held—prior to the GTCA's enactment—that SIF was not within the traditional immunity afforded the sovereign because it was an agency or instrumentality of the State engaged in a business enterprise, as distinguished from a purely governmental function, *Bone* was decided when a distinction was made between governmental and

---

**13.** The Multiple Injury Trust Fund's (MITF) general purpose is to protect employers from responsibility for a combination of old and new disabilities so they can hire physically impaired persons without fear of having to pay for prior disabilities and, thereby, encourage employment of previously impaired workers. *Barber v. Special Indemnity Fund*, 1994 OK CIV APP 55, 875 P.2d 449, 450; *see also Special Indemnity Fund v. Davidson*, 1945 OK 287, 162 P.2d 1016, 1017–1018.

**14.** Of course, SIF also obtains funds by virtue of investment revenue.

**15.** The MITF may obtain additional funds by virtue of 85 O.S. Supp.2000, § 173(E) which authorizes a certain percentage of the money held in the MITF to be invested in specified investments. Also, current law allows rebates that would otherwise go to State agency policy-holders insured by SIF to be credited to the MITF or the General Revenue Fund of the State Treasury. 85 O.S. Supp.2000, § 173.1 provides:

Any dividend, rebate, or other distribution, payable by [SIF] or any other workers' compensation insurance carrier, to a state agency policyholder shall be paid to the State Treasurer, and shall be credited as follows:

1. In the event of failure of the [MITF] to meet all lawful obligations, the monies shall be credited to the [MITF] and shall be used by the [MITF] to meet all lawful obligations of the [MITF]; and

2. Otherwise, all future dividends made by [SIF] or any workers' compensation insurance carrier, on behalf of state agencies, shall be deposited to the credit of the General Revenue Fund of the State Treasury.

proprietary functions of governmental entities for sovereign immunity purposes. *See Vanderpool v. State*, 1983 OK 82, 672 P.2d 1153 (general discussion of governmental/proprietary function issue) and *Hershel v. University Hospital Foundation*, 1980 OK 60, 610 P.2d 237, 242 (recognizing the Court's treatment of SIF in *Bone* involved a holding that SIF was a State enterprise engaged in a proprietary function not entitled to sovereign immunity).[16] The previous distinction existing in sovereign immunity law by virtue of a State entity being engaged in a proprietary function—rather than a governmental one—no longer applies because, under 51 O.S.1991, § 166, the GTCA's provisions are applicable to both governmental and proprietary functions of State entities within its sphere.

■ ¶ 22 In the final analysis, we believe SIF is a State entity coming within the term "agency" as used in the GTCA and it was intended to be covered by the provisions of that Act by the Oklahoma Legislature. Its employees are categorized as State employees and its entire structure is permeated with control and direction by the legislative and executive arms of State government, the latter of which it is a part. Thus, we hold SIF is a State entity falling within the GTCA.

**B. SIF IS ENTITLED TO GTCA IMMUNITY BECAUSE IT IS LEGALLY IMPOSSIBLE FOR APPELLANTS TO PROVE BOTH A VALID CLAIM OF BAD FAITH FAILURE TO TIMELY PAY THE COMPENSATION AWARD AND THAT SIF EMPLOYEES WERE ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT AS DELINEATED IN THE GTCA.**

■ ¶ 23 After this Court abrogated common-law sovereign immunity in *Vander-*

*pool v. State, supra,* the Oklahoma Legislature re-adopted sovereign immunity statutorily, waiving such immunity "only to the extent and in the manner provided in [the GTCA]." *Parker v. City of Midwest City,* 1993 OK 29, 850 P.2d 1065, 1068. In such regard, the GTCA provides in pertinent part that: "[t]he state ... shall not be liable under the provisions of [the GTCA] for any act or omission of an employee acting outside the scope of his employment." 51 O.S.1991, § 153(A).[17] "Scope of employment" is defined as: "performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned...." 51 O.S. Supp. 1994, § 152(9)[now 51 O.S. Supp.2000, § 152(9) ]. The above provisions, taken together, immunize a governmental entity falling under the GTCA when, in order to prevail on the particular tort claim sued upon, a plaintiff is **required, as a matter of law,** to show conduct on the part of a governmental employee that would mandate a determination the employee **was not** acting in good faith. *Parker v. City of Midwest City, supra; see also McMullen v. City of Del City,* 1996 OK CIV APP 46, 920 P.2d 528. In other words, when, for viability, the tort cause of action sued upon requires proof of an element that necessarily excludes good faith conduct on the part of governmental employees, there can be no liability against the governmental entity in a GTCA-based suit. *See DeCorte v. Robinson,* 1998 OK 87, ¶ 13, 969 P.2d 358 (explaining import of *Parker*). A brief look at *Parker* and *McMullen* illustrate the principle.

¶ 24 *Parker* involved a suit against a City covered by the GTCA for the tort of malicious prosecution.[18] In that a plaintiff may

---

**16.** *State ex rel. State Insurance Fund v. Bone,* 1959 OK 135, 344 P.2d 562 concerned a negligence suit against SIF for an employee's involvement in a vehicular accident. In addition to, in effect, relying on the governmental/proprietary sovereign immunity dichotomy, *Bone* held legislative consent to suits against SIF was granted by 85 O.S.1991, § 133(1) that allows SIF to:

Sue and be sued in all the courts of the state, in all actions arising out of any act, deed, matter or things made, omitted, entered into, done or

suffered in connection with the State Insurance Fund....

**17.** Concomitantly, State employees, except resident physicians and interns, may not be named as defendants in a GTCA action when they **do** act in the scope of their employment. 51 O.S. Supp. 1999, § 163(C); *Carswell v. Oklahoma State University,* 1999 OK 102, ¶ 18, 995 P.2d 1118.

**18.** The malicious prosecution suit in *Parker v. City of Midwest City,* 1993 OK 29, 850 P.2d 1065

only prevail on a malicious prosecution claim by showing a defendant acted because of ill-will, hatred, or willfully in a wanton manner [*Parker*, 850 P.2d at 1068], i.e. a standard of culpability or state of mind that would negative any determination the employee had acted in good faith within the duties of his office, employment or tasks lawfully assigned, this Court held it was impossible for the plaintiff to have a viable suit under the GTCA against the City. We explained the City's immunity in the following way:

> [Plaintiff] cannot recover damages from the City on the theory of malicious prosecution. If [the police officer's] actions were in bad faith he was acting outside his scope of employment, and thus the City is not liable. 51 O.S.1991 § 153. If, however, [the officer] was acting in good faith and hence within the scope of employment, [plaintiff] cannot prove his case because he cannot establish the necessary element of malice.

850 P.2d at 1068.

¶ 25 *McMullen* involved a suit against another GTCA-covered City for the tort of outrage or intentional infliction of emotional distress. In *McMullen* the COCA, Div. 1, relying on *Parker*, held: in that the tort of outrage or intentional infliction of emotional distress is viable only when it is shown—by extreme and outrageous conduct—a defendant intentionally (or, at a minimum, recklessly) causes severe emotional distress, it was not possible to have a viable GTCA claim

against the City because intentional infliction of emotional distress cannot be shown if the defendant acted in good faith. 920 P.2d at 531. Therefore, it is necessary to decide whether, in order to prevail on the tort theory of liability sued upon here—i.e. breach of the implied duty of good faith and fair dealing in the form of untimely payment of Mr. Fehring's workers' compensation award-appellants would be required, as a matter of law, to show conduct on the part of SIF employees that would mandate a determination the employees were not acting in good faith. We believe appellants would be required to so show.[19]

█ ¶ 26 To date this Court has not unequivocally sanctioned the viability of a tort suit against a workers' compensation insurer for the bad faith post-award conduct of failing to timely pay a workers' compensation award. *See Anderson v. United States Fidelity and Guaranty Company*, 1997 OK 124, ¶ 1, 948 P.2d 1216 (Simms, J., specially concurring) and ¶ 6 (Lavender, J., dissenting).[20] However, the Court has made it clear, assuming such a claim exists, that viability would be dependent on a showing the defendant had engaged in intentional, wilful and malicious conduct.[21]

¶ 27 In *Goodwin v. Old Republic Ins. Co.*, 1992 OK 34, 828 P.2d 431 this Court held: assuming an insurer could be held liable for the bad faith refusal to pay a workers' compensation award in a timely manner, summary judgment in favor of the insurer was

had its genesis in a City police officer initiating a driving under the influence charge against the plaintiff-upon which plaintiff was acquitted.

**19.** We note there are situations where the scope of employment issue, as it concerns a governmental entity's immunity under the GTCA, cannot be decided as a matter of law. *See e.g. Nail v. City of Henryetta*, 1996 OK 12, 911 P.2d 914. In *Nail* alternative theories of liability were alleged: either the intentional and malicious or negligent use of excessive force when a police officer arrested an intoxicated person. We held in such a situation factual questions concerning whether the officer acted in a malicious, wilful and wanton manner or, instead, merely negligently, precluded summary judgment in favor of City in a GTCA-based suit.

**20.** Although *Whitson v. Oklahoma Farmers Union Mut. Ins. Co.*, 1995 OK 4, 889 P.2d 285, 287 contains a statement that this Court held in

*Goodwin v. Old Republic Ins. Co.*, 1992 OK 34, 828 P.2d 431 that an injured worker has a cause of action for bad faith against his employer's insurance carrier for untimely paying the injured worker's compensation award, *Goodwin* merely assumed such a claim existed. *Goodwin*, 828 P.2d at 431–432, 435–436.

**21.** The Court has explicitly rejected the viability of a bad faith claim against a workers' compensation insurer for pre-award conduct. *Anderson v. United States Fidelity and Guaranty Company*, 1997 OK 124, ¶ 11, 948 P.2d 1216 (Oklahoma law does not recognize the tort of bad faith for unjustified denial of workers' compensation insurance coverage or the assertion of a groundless defense based on alleged damages incurred for insurer's conduct that predates a claimant's workers' compensation award).

properly granted because the claimant had failed to make a sufficient showing of bad faith conduct. In describing the conduct that would be sufficient to support such a claim against a compensation insurer the Court plainly posited that only intentional-bad faith conduct in failing to pay benefits under an award would support such a common law action in tort. *Goodwin*, 828 P.2d at 435.

¶ 28 Further, the entire tenor of the *Goodwin* opinion was that the potential viability of a suit against a workers' compensation insurer for untimely payment of an award would be dependent on a showing of intentional, wilful and malicious actions on the part of the carrier. Part of the rationale of *Goodwin* also seemed to be that only an intentional, wilful act on the part of the insurer would be sufficient to take the matter out of the exclusivity provisions of the Workers' Compensation Act (WCA). 828 P.2d at 434–435. This Court has recognized that the Workers' Compensation Court (WCC) is vested with exclusive jurisdiction to determine and enforce a compensation risk carrier's liability to a claimant. *State Insurance Fund v. Brooks*, 1988 OK 50, 755 P.2d 653, 657; *see also United States Fidelity and Guaranty Co. v. Theus*, 1972 OK 9, 493 P.2d 433, 435 (WCA makes insurance carrier one and the same as the employer as to liability and immunity provided by that Act) and *Commercial Casualty Insurance Co. v. E.B. Cooke Service Station*, 1933 OK 453, 24 P.2d 1007, 1008 *First Syllabus* (WCC has exclusive jurisdiction to determine liability of insurance carrier under a workers' compensation insurance policy and to prescribe the method and manner of payment). Thus, in view of the necessity for a showing of intentional, wilful and malicious conduct, appellants here are in the same position as the plaintiffs in *Parker* and *McMullen*. In other words, to prove a viable claim for bad faith failure to pay the compensation award in a timely manner they would be required, as a matter of law, to show conduct on the part of SIF employees that would necessarily mandate a determination

that the employees were not acting within the scope of their employment, as "scope of employment" is defined in the GTCA.

¶ 29 Even if we were to sanction a tort claim against a workers' compensation carrier for untimely payment of an award based on a standard of culpability of reckless conduct the same result would obtain. Acts performed with reckless disregard for an individual's rights also lack good faith and are outside the scope of employment under the provisions of the GTCA. *Houston v. Reich*, 932 F.2d 883, 889–890 (10th Cir.1991), cited favorably in *Parker, supra*, 850 P.2d at 1067 1068.[22] We hold, therefore, the trial court was correct in granting summary judgment to SIF based on GTCA immunity because it is legally impossible for appellants to prove both a valid claim of bad faith failure to timely pay the compensation award and that SIF employees were acting within the scope of their employment as delineated in the GTCA.

### PART IV. THE MAJORITY OF THE COCA ERRED IN RULING SIF WAS STILL SUBJECT TO SUIT IN CONTRACT AND POTENTIALLY LIABLE FOR THE SAME DAMAGES RECOVERABLE IN TORT, BUT FOR THE GTCA IMMUNITY.

¶ 30 The damages recoverable against an insurance carrier under a tort theory of liability for breach of the implied duty of good faith and fair dealing, i.e. for bad faith, are not coextensive with damages recoverable under a contractual theory. In *Taylor v. State Farm Fire and Casualty Co.*, 1999 OK 44, 981 P.2d 1253 we made this clear. There we said:

> In an *ex contractu* claim it is solely the insured loss that may be recovered, while the *elements of recovery in the bad faith suit are for more than the insured loss:* (a) the loss to be indemnified under the policy *plus* (b) the harm from insurer's bad faith refusal to settle. (italics in original)

**22.** We note, our decision in this case as to the standard of culpability for a viable tort claim (for untimely payment of a compensation award) against a workers' compensation insurer (assuming such a claim exists) is not intended to delineate the level/standard of culpability required to maintain a claim for breach of the implied duty of good faith and fair dealing in regard to other types of insurance coverage.

981 P.2d at 1258 f. n. 22. Therefore, appellants may not avoid the GTCA immunity provided to SIF merely by recasting their tort theory of liability into a contractually-based one.

¶ 31 Furthermore, to allow appellants to proceed on a contractual theory would unnecessarily thwart and/or eviscerate the exclusivity provisions of the WCA. As we stated in **Part III(B)**, this Court has recognized that the WCC is vested with exclusive jurisdiction to determine and enforce a compensation risk carrier's liability to a claimant. *State Insurance Fund v. Brooks, supra.* The WCA provides a procedure for collecting a workers' compensation award. 85 O.S. Supp.1999, § 42(A) provides:

A. If payment of compensation or an installment payment of compensation due under the terms of an award, except in the case of an appeal of an award or an award from the Multiple Injury Trust Fund, is not made within ten (10) days after the same is due by the employer or insurance carrier liable therefor, the Court may order a certified copy of the award to be filed in the office of the court clerk of any county, which award whether accumulative or lump sum shall have the same force and be subject to the same law as judgments of the district court. Any compensation awarded and all payments thereof directed to be made by order of the Court, except in the case of an appeal of an award or an award of compensation from the Multiple Injury Trust Fund, shall bear interest at the rate of eighteen percent (18%) per year from the date ordered paid by the Court until the date of satisfaction. Compensation ordered to be paid from the Multiple Injury Trust Fund shall bear interest at the rate of interest applicable to judgments in civil cases pursuant to Section 727 of Title 12 of the Oklahoma Statutes from the date of the award. Any award from the Multiple Injury Trust Fund prior to November 4, 1994, shall bear interest at the rate of interest applicable to judgments in civil cases pursuant to Section 727 of Title 12 of the Oklahoma Statutes. Upon the filing of the certified copy of the Court's award a writ of execution shall issue and process shall be executed

and the cost thereof taxed, as in the case of writs of execution, on judgments of courts of record, as provided by Title 12 of the Oklahoma Statutes; provided, however, the provisions of this section relating to execution and process for the enforcement of awards shall be and are cumulative to other provisions now existing or which may hereafter be adopted relating to liens or enforcement of awards or claims for compensation.

Mr. Fehring's workers' compensation award was subject to enforcement under § 42(A) and there is simply no warrant to allow a contract action which would sanction monetary recovery over that which is allowed by the WCA. Thus, the COCA majority erred by reversing in part the trial court judgment and remanding for further proceedings. Instead, the trial court summary judgment in favor of SIF should have been affirmed.

## PART V. CONCLUSION.

¶ 32 SIF is a State entity coming within the coverage of the GTCA. Its employees are categorized as State employees and its entire structure is permeated with control and direction by the legislative and executive arms of State government, the latter of which it is a part. In the circumstances of this case, SIF was properly granted GTCA immunity because it is legally impossible for appellants to prove both a valid claim of bad faith failure to timely pay the compensation award and that SIF employees were acting within the scope of their employment. Finally, a majority of the COCA erred in ruling SIF was still subject to suit in contract and potentially liable for the same damages potentially recoverable in tort, but for the GTCA immunity. Such ruling failed to recognize that contractual damages are not coextensive with the damages potentially recoverable in tort for the bad faith conduct of an insurer and failed to properly consider the impact of the WCA provision(s) for enforcing a workers' compensation award.

¶ 33 For the reasons specified, the Court of Civil Appeals' opinion is **VACATED** and the trial court judgment is **AFFIRMED,**

¶ 34 HARGRAVE, C.J., HODGES, LAVENDER, SUMMERS and WINCHESTER, JJ., concur.

¶ 35 WATT, V.C.J. and KAUGER, J., concur by reason of stare decisis.

¶ 36 OPALA, J., concur in Parts I, II, III; concur in judgment but not in the court's pronouncement in Part IV.

¶ 37 BOUDREAU, J., disqualified.