2001 OK 47

**Sonya CRANFORD and Richard Cran-
ford, Plaintiffs/Appellants/Coun-
ter–Appellees,**

v.

**Robert BARTLETT,
Defendant/Appellee/Counter–Appellant.**

**No. 93,002.**

Supreme Court of Oklahoma.

June 5, 2001.

Donald R. Bradford, Tulsa, Oklahoma for Appellants/Counter–Appellees.

James R. Hicks of Morrel, West, Saffa, Craige & Hicks, Inc., Tulsa, Oklahoma for Appellee/Counter–Appellant.

LAVENDER, J.

¶ 1 The question we answer in this case is: did the trial judge err in granting summary judgment to appellee, Robert Bartlett (Robert) in a suit brought against him by appellants, Sonya and Richard Cranford? We hold the trial judge erred and the Court of Civil Appeals (COCA) mistakenly affirmed. Summary judgment is reversed and the matter is remanded to the trial court for further proceedings.[1]

## PART I. STANDARD OF REVIEW.

■ ¶ 2 A grant of summary judgment is reviewed *de novo* because the ultimate decision turns on a purely legal determina-

---

1. Although summary judgment was granted to appellee, Robert Bartlett (Robert), his quest for attorney fees under 12 O.S.1991, § 936 (contending he was the prevailing party in a suit to recover on a note) was denied by the trial judge. In that we reverse summary judgment and remand for further proceedings, no need exists to decide Robert's counter-appeal contesting the denial of his attorney fee motion or the Court of Civil Appeals' (COCA) reversal of that denial—the reversal being challenged on certiorari by appellants, Sonya and Richard Cranford. *See*

*Bullard's Oil Field Service, Inc. v. Williford Energy Co.*, 1989 OK 63, 775 P.2d 802, 803 f.n. 1 (unnecessary to address an appellee's cross (sic)-appeal concerning a trial court's denial of attorney fees to appellee as the prevailing party where matter reversed and remanded) and *Thompson v. Independent School Dist. No. 94 of Garfield County*, 1994 OK 139, 886 P.2d 996, 997–998 (no need to review an attorney fee award based upon prevailing party status because such an award is automatically vacated once the underlying judgment upon which it is based is reversed).

tion, i.e. whether a party to the litigation is entitled to judgment as a matter of law. *Fehring v. State Insurance Fund*, 2001 OK 11, ¶ 3, 19 P.3d 276; *Carmichael v. Beller*, 1996 OK 48, 914 P.2d 1051, 1053. *De novo* review is a plenary, independent and non-deferential re-examination of the trial court's ruling. *Manley v. Brown*, 1999 OK 79, ¶ 22 f.n. 30, 989 P.2d 448. Like a trial court, an appellate court examines the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact [*Fehring v. State Insurance Fund*, 2001 OK 11 at ¶ 3, 19 P.3d 276] and, as in the trial court, all inferences and conclusions arising from the evidentiary materials are viewed in a light most favorable to the non-moving party. *Id.*

■■■■ ¶ 3 If the summary judgment record discloses either controverted material facts, or, even if the material facts are undisputed reasonable minds might reach different conclusions from those facts, summary judgment should be denied [*Prudential Ins. Co. v. Glass*, 1998 OK 52, ¶ 3, 959 P.2d 586] because in neither situation can it rightfully be concluded one side or the other to the lawsuit is entitled to judgment as a matter of law. It must be remembered, neither a trial court nor this Court weighs the evidence on a motion for summary judgment. *Id.; Stuckey v. Young Exploration Co.*, 1978 OK 128, 586 P.2d 726, 730. Evidence weighing is a function for the jury, and in a non-jury case for the trial judge, after an appropriate trial of the issues. *Prudential Ins. Co. v. Glass*, 1998 OK 52 at ¶ 3, 959 P.2d 586. As explained below, the summary judgment record, when subjected to *de novo* review, is unable to support the conclusion that appellee, Robert Bartlett was entitled to judgment as a matter of law.

## PART II.   FACTS.[2]

¶ 4 Appellants owned Grannie Lynette's of Tulsa, Inc. (company), a sitter/employment service.[3] Each appellant owned 2,500 shares of the common stock of the company, the total number of shares of stock outstanding.[4] Appellants sought to sell and Robert's wife, Colleen sought to purchase the company. Negotiations ensued between appellants and Colleen, each side having attorney consultation and representation. A written Stock Purchase Agreement (agreement) was drafted whereby appellants would sell and Colleen would purchase all of appellants' stock and a closing date was set for the sale. At some point before the closing date (March 13, 1996) Colleen and her attorney proposed that appellants accept a short-term note in lieu of the total purchase price being paid at closing.[5] The reason for the proposal was that, although Colleen apparently had certain assets, the assets were not easily transformable into ready cash and, as we explain in more detail below, Robert was to receive imminently an inheritance from his father's estate, part of which he intended to give to Colleen to pay the note.

¶ 5 The total agreed purchase price was $25,000.[6] Appellants were paid $2,000 at or prior to closing and, at closing, they did accept a note signed by Colleen for the remaining $23,000. The note was due on or before May 13, 1996, sixty (60) days from the

2. The factual matters we set forth are supported by evidentiary materials contained in the summary judgment record, reasonable inferences therefrom and/or accord with the parties having agreed certain facts are undisputed.

3. The summary judgment record indicates Grannie Lynette's of Tulsa, Inc. (company) was some type of child/elder care service.

4. A reasonable inference from the summary judgment record is that the 5,000 shares of common stock owned by appellants were the only shares of stock of the company.

5. The record appears to show that appellant, Richard Cranford may not have been present at the closing. The record also seems to indicate that between the two appellants it was Sonya Cranford who was more involved in the negotiations/implementation of the sale of company. We point out these matters because at times, when we refer to appellants, we may be referring to only one of them, but we deem such to be irrelevant to a proper disposition of the appeal.

6. The Stock Purchase Agreement (agreement) sets out that $22,500 of the purchase price was for appellants' stock and the remaining $2,500 for appellants' agreement not to compete with the company for a four (4) year period following closing.

closing. Only Colleen signed the note, and only she and appellants signed the agreement. Robert did not sign the agreement or note, and he is not named as a purchaser in the agreement.

¶ 6 One clause of the agreement allowed Colleen to rescind the entire transaction if she was unable to obtain any necessary license or permit to conduct the business of company.[7] Apparently, Colleen applied for some type of license from the Oklahoma Department of Labor she and her counsel deemed necessary to conduct the business. The license was not granted. Accordingly, the note was not paid and Colleen made an effort to rescind the transaction under the necessary-license rescission clause. Although we have not been afforded all details concerning it, apparently some type of declaratory judgment lawsuit was filed by Colleen seeking resolution of her right to rescind. However, that lawsuit did not culminate in a final adjudication of the issue because Colleen filed for bankruptcy and any liability she had to appellants for the debt on the note was discharged in the bankruptcy proceeding.

¶ 7 Appellants, in this case, sued Robert to recover (among other relief) the remainder of the purchase price they asserted was due. In addition to raising claims based on fraud, estoppel by silence and guaranty, appellants' amended petition alleged that Robert, unbeknownst to them, was to receive a joint interest in the stock of company to be purchased and that he did receive an interest in the stock purchased from them.[8] In other words, facts were pled in the amended petition to, in effect, allege that Robert was intended to be, and in fact was, a joint purchaser of the business with his wife, although appellants were led to believe only Colleen would be purchasing their stock, and, thus, the company. In essence, appellants alleged

Robert and Colleen were codebtors/joint obligors for the remaining purchase price because they were truly joint purchasers.

¶ 8 After the filing of the amended petition Robert moved for summary judgment, appellants responded to the motion and Robert filed a reply to appellants' response. The record is undisputed that Robert was present at the closing. Although it is also undisputed he said nothing at the closing until the agreement and note were signed, evidentiary materials are in the record to raise, at a minimum, a reasonable inference that Robert, at the closing, heard statements made by Colleen and/or her attorney, to the effect that he would be providing his wife with the funds necessary to pay the note from an inheritance he was anticipating imminently receiving from his father's estate. There are also evidentiary materials to raise, at least, a reasonable inference that after the agreement was signed by appellants and Colleen and the note by Colleen, that Robert, immediately after the closing, in effect, verified to appellants the above mentioned statements made during the closing by Colleen and/or the attorney.

¶ 9 In fact, there is really no dispute in the record that both appellants and Robert understood that the funds to pay off the note, i.e. the remaining purchase price, were to come from the inheritance funds. Robert's own deposition testimony reveals he had an understanding with his wife that he would provide her with the funds to pay off the note, said funds to emanate from the inheritance. There is also little question that the summary judgment record contains evidentiary materials to support the reasonable inference that Robert understood that appellants agreed to accept the note for the remainder of the purchase price based on their understanding it would be paid by the inheri-

---

7. Paragraph 4.4(e) of the agreement provides:

[Colleen] Bartlett shall have a reasonable time after Closing to apply for and must be approved for and be issued any necessary licenses or permits to conduct the business ... which are not otherwise assignable by the transfer of the Stock to [Colleen]. [Colleen] shall have the option of rescinding this transaction if she is unable to obtain any such licenses or permits.

8. Much of the focus of appellants' amended petition and the summary judgment submissions of the parties is placed on the fraud and estoppel by silence theories of liability asserted by appellants. In that the summary judgment record is insufficient to foreclose Robert's potential liability on the theory that he was actually a joint purchaser of the company, along with his wife Colleen, we need not delve into the viability of any fraud or estoppel by silence theories of liability.

tance funds. In substance, Robert freely admitted in his deposition testimony that he understood appellants agreed to accept the sixty (60) day note in reliance upon the availability of the inheritance money to pay it.[9] Further, appellant, Sonya Cranford (in her deposition), in substance, testified that Colleen had told her at some point prior to the closing that she (i.e. Colleen) was going to run the company and that Robert was going to purchase it for her. The record also contains evidentiary material showing Robert did eventually receive certain inheritance funds from his father's estate and, at least, some of said funds, sufficient in amount to pay the remainder of the purchase price, were actually deposited into a joint account he had with Colleen—but the amount so deposited was later withdrawn from the joint account and placed in an account in Robert's name only.

¶ 10   Copies of the two stock certificates of 2,500 shares each (i.e. the stock of company being purchased) are also contained in the summary judgment record. The certificates were executed by appellants in blank as to the purchaser(s) and turned over to Colleen and her legal representative in such blank condition, but at a later time were filled in as having been sold, assigned and transferred to both Robert and Colleen in joint tenancy with right of survivorship. The Cranfords' endorsements on the two certificates are dated the day of closing (i.e. March 13th). The transferring language on the stock certificates, after having been filled in by someone after closing with the names of the transferees, reads as follows:

> For Value Received, I, hereby sell, assign and transfer unto Robert E. Bartlett and Colleen A. Bartlett as joint tenants with Right of Survivorship and not as tenants in common [2500] Shares of the Capital Stock represented by the within Certificate . . . . [10]

¶ 11   Even though the summary judgment record supports, at least, the reasonable inference/conclusion that Robert was intended to be and was, in fact, a joint purchaser of the stock/company, along with Colleen, the trial judge granted Robert's motion for summary judgment and the COCA affirmed. We now reverse and vacate those rulings, respectively, and remand to the trial court for further proceedings.

## PART III.   LEGAL ANALYSIS.

¶ 12   On summary judgment Robert, in part, argued appellants were merely suing him as a guarantor and because there was no guaranty in writing signed by him, the statute of frauds provided him with a complete defense.[11] Although appellants did assert a guaranty theory of liability in their amended petition, the theory was not exclusive. The amended petition and the summary judgment record make it plain that

9.   In the trial court Robert appears to have tried to convince the trial judge that the whole transaction was properly subject to recission by virtue of the necessary-license rescission clause contained in the agreement. *See* note 7, *supra*, for clause language. Further, his deposition testimony was to the effect that his willingness to provide the inheritance funds to Colleen was conditional/dependent on her ultimately deciding to go through with the purchase, i.e. that she not exercise her option to rescind under the necessary-license rescission clause. Suffice it to say, under our reading of the summary judgment record one cannot definitively determine whether recission was properly invoked or not under said clause.

10.   The record does not definitively reveal who filled in the stock certificates to provide that the stock was being sold to both Robert and Colleen in joint tenancy.

11.   The statute of frauds provides:

> The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent:
>
>   1.   An agreement that, by its terms, is not to be performed within a year from the making thereof.
>
>   2.   A special promise to answer for the debt, default or miscarriage of another, except in the cases provided for in the article on guaranty.
>
>   3.   An agreement made upon consideration of marriage, other than a mutual promise to marry.
>
>   4.   Repealed [by] Uniform Commercial Code, title 12A, § 10–102[ ].
>
>   5.   An agreement for the leasing for a longer period than one (1) year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged.

appellants also claimed Robert was intended to be and was an undisclosed party to the sale, i.e. he was a joint purchaser along with his wife and he was not merely a guarantor. A party litigant may plead, and rely on at trial, alternative and inconsistent theories or defenses under the Oklahoma Pleading Code, 12 O.S.1991, § 2001 et seq., as amended. 12 O.S.1991, § 2008(E)(2); *Howell v. James,* 1991 OK 47, 818 P.2d 444. Although inconsistent judgments or double recovery may not be permissible, § 2008(E)(2) generally allows a party to fully litigate inconsistent theories or defenses at trial. *Howell v. James,* 818 P.2d at 447. Thus, as we explain below, if Robert was in actuality a joint purchaser, the statute of frauds would not provide a viable defense and summary judgment was inappropriate.

¶ 13  A guaranty, in its common acceptation, is understood to mean an undertaking to answer for the payment of some debt, or the performance of some duty, of another, in the case of a failure of such other to pay or perform. *Gravelle v. Pollock Stores Co.,* 1928 OK 229, 131 Okla. 20, 267 P. 473, 474–475.[12]  A guaranty is generally understood to be a collateral undertaking or liability, rather than a direct one, because the guarantor agrees to pay only in the case of the default of the party to whom goods are furnished or credit is extended. *Gravelle,*

267 P. at 473, *Syllabus by the Court.*  In *Gravelle* the following legal precept was stated by this Court: unless, under all the testimony, all reasonable persons must reach the conclusion that the liability was collateral (i.e. merely a guaranty) and not direct, an issue as to whether a promise of a person sought to be bound is direct or collateral for statute of fraud purposes is a question of fact to be submitted to the jury. 267 P. at 473, *Syllabus by the Court.  See also Cales v. Gray,* 1924 OK 1096, 105 Okla. 54, 231 P. 300 *Syllabus by the Court* (basically same). Although in *Cales* the facts did not warrant a reasonable conclusion that a joint obligation was intended, this Court recognized that if the facts do warrant, a joint obligation may be created. *Cales,* 231 P. at 301. We also note that it is not unusual for a husband and wife to engage in some type of business enterprise together. *See e.g. Vogel v. Traders' Compress Co.,* 1928 OK 122, 129 Okla. 200, 264 P. 147 (husband and wife engaged in partnership relationship buying and selling cotton).

¶ 14  The case of *Waldock v. First Nat. Bank of Idabel,* 1914 OK 424, 43 Okla. 348, 143 P. 53 makes plain that a joint obligation or debt is not a guaranty and it is not subject to the statute of frauds requirement of a writing.  In the *Syllabus by the Court* in *Waldock* three potential scenarios and the

---

12.  15 O.S.1991, § 321 defines guaranty as follows: "[a] guaranty is a promise to answer for the debt, default or miscarriage of another person." 15 O.S.1991, § 324 provides: "[e]xcept as prescribed by the next section, a guaranty must be in writing, and signed by the guarantor; but the writing need not express a consideration." 15 O.S.1991, § 325 states:

A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing:
1.  Where the promise is made by one who has received property of another upon an undertaking to apply it pursuant to such promise; or by one who has received a discharge from an obligation in whole or in part, in consideration of such promise.
2.  Where the creditor parts with value, or enters into an obligation, in consideration of the obligation in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made his surety.

3.  Where the promise, being for an antecedent obligation of another, is made upon the consideration that the party receiving it cancels the antecedent obligation, accepting the new promise as a substitute therefor; or upon the consideration that the party receiving it releases the property of another from a levy or his person from imprisonment under an execution on a judgment obtained upon the antecedent obligation; or upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation, or from another person.
4.  Where a factor undertakes, for a commission, to sell merchandise and guaranty the sale.
5.  Where the holder of an instrument for the payment of money, upon which a third person is or may become liable to him, transfers it in payment of a precedent debt of his, or for a new consideration, and in connection with such transfer enters into a promise respecting such instrument.

applicability or inapplicability of a statute of frauds defense are set forth. *Waldock* states:

> Where money is loaned to R. solely upon a verbal promise of W. and credit is extended solely to W. and no credit is extended to R., the promise of W. is original, and does not come within the statute of frauds.

> Where money is loaned or goods sold to R. and W. jointly, and credit is extended to both, and both promise to pay the same, although such money is borrowed or goods purchased for the sole benefit of R., the promise of R. and W. is original, and they are codebtors, and such promise need not be in writing, and either or both will be liable for the debt.

> Where money is loaned or goods sold to R. for his use and benefit, and credit is extended to R. and W. jointly, or if any credit is extended to R., W.'s promise to pay is collateral, and comes within the statute of frauds, unless it be in writing.

The following facts contained in the summary judgment record are plainly sufficient to warrant, at least, the reasonable inference that Robert and Colleen were joint purchasers of the company and, if they were, the second scenario spelled out in *Waldock* cannot be ruled out at the summary judgment stage. Robert's name appears on the two stock certificates as a joint transferee along with Colleen; he was the person that would be funding the purchase of company or, at least, the remainder of the purchase price; and Colleen would apparently be the person that would handle running the company had the sale gone through. If Robert and Colleen were joint purchasers, the statute of frauds would provide no defense because Robert's liability would be original, not collateral. Further, if they were joint purchasers Robert might have some liability for the remaining purchase price and summary judgment should not have been granted in his favor.

**PART IV. SUMMARY.**

¶ 15  Even though Robert is not named as a purchaser in the agreement and he did not sign it or the note, the summary judgment record—taking the evidentiary materials in the light most favorable to appellants—plainly supports a reasonable inference that Robert and Colleen were joint purchasers of the company. If such was the case the statute of frauds would provide Robert with no viable defense and he might have some liability for the remaining purchase price. It was, therefore, improper for the trial judge to grant summary judgment to Robert and it was error for the COCA to have affirmed the grant of summary judgment.

¶ 16  THE OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; THE JUDGMENT OF THE TRIAL COURT IS REVERSED AND THE MATTER IS REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS.

¶ 17  HARGRAVE, C.J., OPALA, SUMMERS, BOUDREAU and WINCHESTER, JJ., concur.

¶ 18  WATT, V.C.J., HODGES and KAUGER, JJ., dissent.