2013 OK 100

**Kelly and Tina TROXELL, Plaintiffs/Appellants,**

v.

**OKLAHOMA DEPARTMENT OF HUMAN SERVICES; Howard Hendrick, in his official capacity as the Director of Human Services; Richard DeVaughn; Ron Mercer; Jay Dee Chase; Patrice Douglas; Mike Peck; Gerri Webb; Aneta Wilkinson; and George Young, in their official capacities as members of the Oklahoma Commission for Human Services, Defendants/Appellees.**

No. 107885.

Supreme Court of Oklahoma.

Nov. 26, 2013.

Steven Alan Novick, Tulsa, Oklahoma, for Plaintiffs/Appellants.

Travis Smith, Oklahoma City, Oklahoma, for Defendants/Appellees.

REIF, V.C.J.

¶ 1 This case concerns the monthly subsidy provided by the Oklahoma Department of Human Services (DHS) to adoptive parents of special needs children. The controversy in this regard stems from a decision by DHS to pay foster parents of special needs children a higher subsidy amount than is paid to adoptive parents. DHS has set the monthly foster placement subsidy at $365.00 per child, while capping the monthly adoptive placement subsidy at $310.50 per child.

¶ 2 Kelly and Tina Troxell, the adoptive parents of two special needs children, challenged this two-tier subsidy system through the DHS administrative hearing process and through judicial review proceedings in the district court and the Court of Civil Appeals. They have relied on the Court of Civil Appeals opinion in *Laws v. State ex rel. Oklahoma Department of Human Services*, 2003 OK CIV APP 97, ¶ 16, 81 P.3d 78, 84. This case ruled that a prior two-tier system of subsidy payments "arbitrarily and without authority, limited adoptive parents to an amount less than that provided to foster parents." Neither DHS in its administrative proceedings nor the courts in judicial review found the *Laws* opinion to be dispositive and rejected the Troxells' challenge.

¶ 3 DHS has defended the current two-tier system of monthly subsidy assistance by noting it is not prohibited either by the Adoption Assistance and Child Welfare Act of 1980[1] (the federal act that provides funding for the subsidies), or by the Childrens' Bureau of the United States Department of Health and Human Services (the federal agency that oversees implementation of the subsidy program by the states). DHS specially notes that the Childrens' Bureau issued an interpretation[2]

---

1. 42 U.S.C. § 670 *et seq.* (2006).

2. Admin. for Children & Families, U.S. Dep't of Health & Human Servs., *Child Welfare Policy Manual* § 8.2D.4 (2012). The interpretation of the law is as follows:

1. Question: Please explain how the State agency should set rates for title IV–E adoption assistance payments.
Answer: The amount of the adoption assistance payment cannot exceed the amount the child would have received if s/he had been in a foster family home, but otherwise must be determined through agreement between the adoptive parents and the State or local title IV–E agency. Unlike other public assistance programs in the Social Security Act, the title IV–E adoption assistance program is intended to encourage an action that will be a lifelong social benefit to certain children and not to meet short-term monetary needs during a crisis. Further, the adoptive parents' income is not relevant to the child's eligibility for the program.
Title IV–E adoption assistance is not based upon a standard schedule of itemized needs and countable income. Instead, the amount of the adoption assistance payment is determined through the discussion and negotiation process

between the adoptive parents and a representative of the State agency based upon the needs of the child and the circumstances of the family. The payment that is agreed upon should combine with the parents' resources to cover the ordinary and special needs of the child projected over an extended period of time and should cover anticipated needs, e.g., child care. Anticipation and discussion of these needs are part of the negotiation of the amount of the adoption assistance payment.
. . . .
5. Question: Some State's foster care rate structures are based on levels of care. How would such a structure impact the adoption assistance rates?
Answer: If a State's foster care payment schedule includes higher level-of-care rates that are paid across-the-board for certain children, the State may pay up to that amount in adoption assistance if that specific child would have received the higher level-of-care rate in foster care. In addition, if a State's foster care payment standard includes across-the-board higher foster care rates for working foster parents to pay for child care, or includes provisions for periodic across-the-board increases for such items as seasonal clothing, the adop-

of the Act (after the *Laws* opinion) that confirmed two-tier systems were not prohibited by the Act. In addition, DHS points out that Congress and the Oklahoma Legislature have specially provided that the monthly adoption subsidy cannot exceed the amount that would be paid if the children were in foster care. *See* 42 U.S.C. § 673(a)(3)[3] and 10 O.S.Supp.2003, § 7510–1.5(A).[4] DHS

tion assistance agreement may include the higher rate. However, special allowances that may be made on behalf of an individual child in certain situations in foster care, such as child care or clothing allowances, are not permitted as an allowable additional reimbursement in the adoption assistance program. Special allowances for individual children that are over and above the State's foster care payment standard cannot be included in the amount negotiated in the adoption assistance agreement since the adoption assistance payment cannot exceed the foster care maintenance payment rate for the child.

. . . .

7. Question: May a State's policy limit the maximum adoption assistance payment for any family at a level lower than the maximum foster care maintenance payment a child would have received in a foster family home? Answer: Federal law and regulations do not prohibit a State from having a law or policy that limits the maximum adoption assistance payments to a level lower than the maintenance payment a child would have received in a foster family home. The law only prescribes that the adoption assistance payment can be no more than the foster care maintenance payment that the child would have received in a foster family home during the same time period (see section 473(a)(3) of the Social Security Act). Within these parameters, however, the State must negotiate the amount of the adoption assistance payment with the adoptive family taking into consideration the needs of the child and the circumstances of the family. Furthermore, from a practice standpoint establishing a lower ceiling within which the State and family may negotiate an adoption assistance payment may reduce the pool of adoptive parents available to provide permanent homes for children with special needs.

3. Subsection 673(a)(3) provides:

(3) *The amount of the payments* to be made in any case under clauses (i) and (ii) of paragraph (1)(B) *shall be determined through agreement between the adoptive parents and the State or local agency administering the program* under this section, *which shall take into consideration the circumstances of the adopting parents and the needs of the child being adopted*, and may be readjusted periodically, with the concurrence of the adopting parents (which may be specified in the adoption assistance agreement), depending upon changes in such circumstances. *However, in no case may the amount of the adoption assistance payment made under clause (ii) of paragraph (1)(B) exceed the foster care maintenance payment which would have been paid during the period if the*

*child with respect to whom the adoption assistance payment is made had been in a foster family home.* (Emphasis added).

4. Section 7510–1.5(A) provides:

A. 1. When a parent or parents are found and approved for adoption of a child who is determined by the Department of Human Services to be eligible for adoption assistance pursuant to the Oklahoma Adoption Assistance Act, and before the final decree of adoption is entered, there must be a signed written agreement between the prospective adoptive parent or parents and the Department.

2. Adoption assistance in individual cases may commence with the adoptive placement or at the time of finalization of the adoption. Adoption assistance may be for special services only, or for monthly money payments, and either for a limited period, or for a long term, or for any combination of the foregoing.

Eligibility for and the rate of monthly adoption assistance payments shall be determined by the Department in accordance with rules promulgated by the Commission for Human Services.

Under subchapter 15–128.5 of chapter 75 of the Oklahoma Administrative Code 340, adoption assistance is determined as follows:

(c) Determination of adoption assistance benefits.

(1) Each Adoption Assistance Agreement is based upon the circumstances of each case and not a set of predetermined guidelines.

(2) The adoptive parent(s) is advised by the adoption specialist of the different components of adoption assistance, including special services, coverage under Title XIX Medicaid, reimbursement of non-recurring adoption expenses, and a monthly assistance payment.

(A) When the child is eligible for Title IV–E adoption assistance:

(i) the amount of the assistance payment, if any, is determined by agreement between the adoptive parent(s) and OKDHS.

(I) The adoption specialist negotiates with the adoptive parent(s) to reach agreement on the assistance amount, considering the circumstances of the adopting parent(s) and the needs of the child.

(II) When the parties cannot agree, OKDHS establishes the payment amount;

(ii) the payment amount is within the range of adoption assistance rates in OKDHS Appendix C–20 (.pdf, 9 pp, 109 KB), Children and Family Services Division Rates Schedule; and

(iii) the maximum amount cannot exceed the equivalent of the foster care maintenance payment that would have been paid during the period if the child had been in a foster family

reads these special provisions to mean that the subsidy for children in adoptive placements can be in any reasonable amount up to and including the amount of the subsidy for children in foster placements, but not more.

■■■ ¶ 4 Clearly, the resolution of the controversy in this case requires an interpretation of both federal and Oklahoma statutory law. This identical task was undertaken by the Court of Civil Appeals in the *Laws* case. Paragraphs 14 and 15 of the *Laws* opinion correctly state the standard of review to be applied. The guiding principles for review are found in the court's declarations that interpretation of statutory law presents a question of law and statutes are construed to determine legislative intent in light of the general policy and purpose that underlie them. 2003 OK CIV APP 97, ¶¶ 14–15, 81 P.3d at 83–84. Also important are the court's observations that the DHS interpretation of the statutes in question must be reviewed *de novo,* but the informal interpretations by the Childrens' Bureau should be considered in ascertaining the purpose, policy and meaning of the federal statutes. *See id.*

¶ 5 To be sure, nothing in either federal law or state law prohibits a two-tier system of subsidies. Also, the statutory provisions that prohibit paying a greater subsidy to adoptive parents than paid to foster parents do imply that the adoption placement subsidy can be less than the foster care placement subsidy. Significantly, the *Laws* opinion does not prohibit DHS from using a two-tier system or require parity in the subsidies for adoptive placements and foster placements. In fact, the *Laws* opinion expressly recognized that "[t]he State may indeed pay less to an adoptive parent than to a foster parent because individual cases may and do vary as the needs of the child may vary." *Id.* ¶ 17, 81 P.3d at 84 (emphasis omitted). The *Laws* opinion further emphasized that "payment of the maximum is obviously not automatically required in every case." *Id.* ¶ 22, 81 P.3d at 85.

■■■ ¶ 6 The effect of the two-tier system that the *Laws* case condemned was the impo-

sition of "a ceiling different for each class of case, such that the adoptive parent may never under any circumstances obtain assistance equal to assistance provided to foster parents." *Id.* ¶ 17, 81 P.3d at 84 (emphasis omitted). The Court of Civil Appeals found that "[t]he purpose of the [subsidy program] is to encourage adoption of special needs children by providing assistance to alleviate the financial burdens associated with the special needs of the children." *Id.* ¶ 22, 81 P.3d at 85. The court concluded a predetermined limit on adoption assistance was inconsistent with this purpose. *Id.* ¶ 21, 81 P.3d at 85. The court said "[o]nly the individual needs of the child and circumstances of the family govern the limits [of assistance], subject to the [foster] cap," *id.* ¶ 22, 81 P.3d at 85, and the burden is on DHS "to justify … a cap on assistance to adoptive parents other than the maximum tied to foster care payments." *Id.* ¶ 21, 81 P.3d at 85. In the final analysis, the State cannot impose a limitation on subsidies that "artificially frustrates the purpose of the Act … and [fails] to meet the needs of the child and to consider the family circumstances." *Id.*

¶ 7 Despite acknowledging that the Act does not prohibit two-tier systems, the informal interpretation by the Childrens' Bureau, relied upon by DHS, does not endorse their use. In fact, the informal interpretation, like the *Laws* case, stresses that the State must negotiate the amount of the adoption assistance payment with the adoptive family taking into consideration "the needs of the child and the circumstances of the family." Admin. for Children & Families, U.S. Dep't of Health & Human Servs., *Child Welfare Policy Manual* § 8.2D.4 (2012)(answer to question 7). The informal interpretation also cautions about an adverse consequence of fixing a ceiling on the subsidy for adoption placements. *Id.* More importantly, nothing in the informal interpretation provides DHS "a license to discriminate against adoptive parents," *Laws,* 2003 OK CIV APP 97, ¶ 16, 81 P.3d at 84, contrary to the binding interpretation of law as set forth in the *Laws* case.

---

home. Therapeutic foster care does not constitute a foster family home.
OAC 340:75–15–128.5.

Although *Laws* was decided under a prior version of 10 O.S. Supp.2003, § 7510–1.5, the analysis under the current version is the same.

Until the Legislature declares a different policy, DHS must administer financial assistance to special needs children within the legal guidance of the *Laws* case.

¶8 Upon *de novo* review, this Court finds that the Court of Civil Appeals opinion in the *Laws* case identified the public policy and purpose underlying the monthly subsidy payment for special needs children, whether in adoptive placements or foster placements. We further find the *Laws* opinion correctly interpreted both federal and State law in light of that policy and purpose, and held "the underlying legislative intent is to make the subsidy available to *all* adoptive parents and in an amount up to the maximum provided by law." *Id.* ¶23, 81 P.3d at 85. We now approve the *Laws* opinion for publication and give it precedential effect for our decision in this case.

¶9 Although the *Laws* opinion dealt with the pre–1999 subsidy system, the current ceiling at issue in this case suffers from the same defect as the pre–1999 system. That is, DHS is attempting to apply a predetermined fixed amount of subsidy without allowing adoptive parents to show greater need up to the amount provided for special needs children in foster care. This is contrary to the policy and purpose of the statutory law providing and regulating financial assistance to people who undertake parental responsibility and care of special needs children.

¶10 The opinion of the Court of Civil Appeals in the case at hand is vacated and the district court order sustaining the decision of the Department of Human Services is reversed. This case is remanded to the district court with directions to vacate the decision of the Department of Human Services and further remand the case to Department of Human Services for redetermination of the monthly subsidy amount for the two special needs children of Kelly and Tina Troxell consistent with the views expressed in this opinion.

**CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS OPINION VACATED, REVERSED AND REMANDED.**

¶11 COLBERT, C.J., REIF, V.C.J., WATT, EDMONDSON, and GURICH, JJ., concur.

¶12 KAUGER, WINCHESTER, and COMBS, JJ., concur in result.

COMBS, J., with whom KAUGER, and WINCHESTER, JJ., join, concurring in result.

I would make the opinion prospective from the date of its issuance.

¶13 TAYLOR, J., dissents.