2015 OK CIV APP 29

**Sharon SPANE, Plaintiff/Appellant,**

v.

**CENTRAL OKLAHOMA COMMUNITY ACTION AGENCY, Defendant/Appellee.**

**No. 112,215.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Feb. 5, 2015.

Rehearing Denied March 5, 2015.

Mark Hammons, Christine E. Coleman, Hammons, Gowens & Hurst, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Jeffrey R. Schoborg, Conner & Winters, LLP, Tulsa, Oklahoma and Crystal A. Johnson, Conner & Winters, LLP, Oklahoma City, Oklahoma, for Defendant/Appellee.

DEBORAH B. BARNES, Judge.

¶ 1 Plaintiff/Appellant Sharon Spane (Spane) appeals the trial court's Judgment granting the motion for summary judgment of Defendant/Appellee Central Oklahoma Community Action Agency (COCAA) on the basis that it lacks subject matter jurisdiction because Spane failed to comply with the notice provisions of the Governmental Torts Claims Act (GTCA), 51 O.S.2011 §§ 151–172. Based on our review, we affirm.

### BACKGROUND

¶ 2 In February, 2012, Spane filed a petition alleging that in March, 2010, her employment with COCAA was wrongfully terminated in retaliation for pursuing a workers' compensation claim. In the proceedings that

followed,[1] COCAA asserted it is a community action agency established pursuant to 74 O.S. 2011 §§ 5035–5040, and, therefore, that it constitutes a "political subdivision" under the GTCA. It argued that Spane, who was the Deputy Director of COCAA, was therefore required to present notice of her claim within one year of the date of termination pursuant to the notice requirements of the GTCA. COCAA argued that because Spane failed to present such notice, the trial court lacked subject matter jurisdiction.

¶ 3 In response, Spane asserted, among other matters, that COCAA was never properly established as a community action agency, and, therefore, the GTCA does not apply.

¶ 4 A hearing was held in August, 2013, on COCAA's motion for summary judgment and Spane's motion for partial summary judgment.[2] At the hearing, COCAA discussed the evidence it had produced in support of its assertion that it is a properly established community action agency, and that it has been so for many years. Spane countered that although employees of the Oklahoma Department of Commerce (ODOC) may believe COCAA to be a community action agency, and although COCAA may receive funds from ODOC as a community action agency, that ODOC has failed to properly designate COCAA as a community action agency because it has never issued a "formally entered and recorded" designation. Spane implied at the hearing, moreover, that no entities in Oklahoma—regardless of whether they function as community action agencies and receive block grant funds as community actions agencies—are properly established pursuant to 74 O.S.2011 §§ 5035–5040 because "there is no document that exists anywhere that reflects that [ODOC] designated in terms of issuing a designation to any agencies as Community Action Agencies." Spane stated: "The issue is did [ODOC] do what they were supposed to."

¶ 5 COCAA responded at the hearing that [Spane's] argument is with the state legislature. The state legislature left it to ODOC to establish [its] process. ODOC has spoken. [It has] established that process, and in fact, [it] distributed funds pursuant to those processes consistent with Sections 5035 and through 5040 of Title 74.

But really the bottom line here … is [ODOC], an agency of the State of Oklahoma through its general counsel[,] has spoken and said that [COCAA is] designated as a Community Action Agency, and ODOC's corporate legal representative also stated the same exact thing under penalty of perjury.

[Spane is] taking issue with ODOC in whether or not [ODOC is] doing [its] job right, that's not the issue that's before the Court. [Spane] can take that up with the state legislature. As the process stands now everything has been done to satisfy statutorily what is required of ODOC. ODOC has spoken in absolutely unequivocal … terms.

¶ 6 At the end of the hearing, the trial court expressed concern "about the fact that the process seems to be very informal for those designations," but stated that the statutes "really [do not] say what that process should be. Counsel [for COCAA] is correct, there is nowhere in there where it says after you get a certificate you are designated, or after we do something in writing you are designated." The trial court ultimately determined that "the [GTCA] does apply, and therefore, I do not have subject matter jurisdiction." The trial court's determination was memorialized in its Judgment filed in September, 2013.

¶ 7 From the Judgment, Spane appeals.

## STANDARD OF REVIEW

¶ 8 An order sustaining summary judgment in favor of a litigant presents solely a legal matter. *Feightner v. Bank of Oklahoma, N.A.*, 2003 OK 20, ¶ 2, 65 P.3d 624. Questions of law mandate application of the *de novo* standard of review, which affords

1. Although procedural issues will be addressed, if necessary, in the analysis section of this Opinion, a detailed recitation of the already lengthy procedure of this case is unnecessary.

2. Spane requested partial summary judgment, asserting "that the absence of a formally entered and recorded designation is fatal to [COCAA's] GTCA immunity defense."

this Court with plenary, independent, and non-deferential authority to examine the issues presented. *Martin v. Aramark Servs., Inc.,* 2004 OK 38, ¶ 4, 92 P.3d 96.

¶ 9 Examination of an order sustaining summary judgment requires Oklahoma courts to determine whether the record reveals disputed material facts or whether reasonable minds could draw different conclusions from undisputed facts. *Cranford v. Bartlett,* 2001 OK 47, ¶ 3, 25 P.3d 918. All facts and inferences must be viewed in the light most favorable to the party opposing summary adjudication. *Estate of Crowell v. Bd. of Cnty. Comm'rs of Cnty. of Cleveland,* 2010 OK 5, ¶ 22, 237 P.3d 134. If the essential fact issues are in dispute, or reasonable minds might reach different conclusions in light of the inferences drawn from undisputed facts, summary judgment should be denied. *Schovanec v. Archdiocese of Okla. City,* 2008 OK 70, ¶ 39, 188 P.3d 158.

¶ 10 Finally, "interpretation of statutory law presents a question of law and statutes are construed to determine legislative intent in light of the general policy and purpose that underlie them." *Troxell v. Okla. Dep't of Human Servs.,* 2013 OK 100, ¶ 4, 318 P.3d 206 (citation omitted).[3]

## ANALYSIS

### I. *COCAA's Status as a Political Subdivision Under the GTCA*

¶ 11 The GTCA provides as follows:

A. The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts.

B. The state, only to the extent and in the manner provided in this act, waives its immunity and that of its political subdivisions....

51 O.S.2011 § 152.1. The GTCA further provides that "[t]he liability of the state or political subdivision under [the GTCA] shall be exclusive...." § 153(B).

¶ 12 The GTCA requires, first of all, that "claims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs. A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs." § 156(B). The Oklahoma Supreme Court has explained that "the notice provisions contained in the GTCA are to protect governmental interests by promoting prompt investigation, repair of dangerous conditions, [and] speedy settlement of meritorious claims, and to give the governmental entity time to meet possible fiscal liabilities." *Pellegrino v. State ex rel. Cameron Univ.,* 2003 OK 2, ¶ 17, 63 P.3d 535 (emphasis omitted).

¶ 13 It is undisputed that Spane failed to comply with the notice provisions of the GTCA. In fact, Spane admits that she never filed "a GTCA notice," and argues, instead, that "none was required" because COCAA is not a political subdivision under the GTCA.

¶ 14 As indicated above, " '[p]olitical subdivision' means: ... for purposes of [the GTCA] only, any community action agency established pursuant to Sections 5035 through 5040 of Title 74 of the Oklahoma Statutes[.]" 51 O.S.2011 § 152(11)(n). In support of its assertion that it is a community action agency established pursuant to the applicable statutes, COCAA has attached a letter from Donald R. Hackler, Jr. (Hackler), the Deputy General Counsel and Public In-

---

3. In *Estes v. ConocoPhillips Co.,* 2008 OK 21, 184 P.3d 518, the Oklahoma Supreme Court stated:
   The primary goal of statutory interpretation is to ascertain and follow the intent of the Legislature. Where a statute's meaning is ambiguous or unclear, we employ rules of statutory construction to give the statute a reasonable construction that will avoid absurd consequences. It is important in construing the Legislative intent behind a word to consider the whole act in light of its general purpose

and objective, considering relevant portions together to give full force and effect to each. A statute will be given a construction, if possible, which renders every word operative, rather than one which makes some words idle and meaningless. We presume that the Legislature expressed its intent and intended what it expressed, and statutes are interpreted to attain that purpose and end, championing the broad public policy purposes underlying them.
   *Id.* ¶ 16 (footnotes omitted).

formation Officer of ODOC, in which he states:

The service area for [COCAA] was designated by [ODOC] even before I joined the Agency in 1990.

. . . .

Annually [COCAA] receives federal and state funds from our offices to support [its] programs and services. Only community action agencies designated by [ODOC] can receive these funds.

¶ 15 COCAA has also attached an affidavit of Hackler,[4] in which he states, "I am responsible for all legal matters concerning [ODOC], and oversight of federally funded programs. Additionally, I am aware of what is required of community action agencies related to designation." He further states as follows:

6. In 1964, President Lyndon Johnson signed into law the Economic Opportunity Act that created the nationwide Community Action Network. Subsequently, CO-CAA, a private, non-profit corporation was formed in 1968. At the time of COCAA's formation, oversight was provided by the Oklahoma Department of Economic and Community Affairs ("DECA").

7. In 1986, ODOC was created by the Oklahoma legislature. As a result, all powers . . . and obligations of DECA were transferred to ODOC.

8. Also in 1986, a new set of sections to Title 74 of the Oklahoma Statutes were promulgated dealing with community action agencies. These sections remain in effect.

9. Section 5036 of Title 74 defines a community action agency as a "public or private nonprofit agency, designated by [ODOC]." Additionally it provides that ODOC has the right to evaluate existing agencies, as may be necessary, and/or rescind designation in accordance with statutory procedures.

10. ODOC is solely responsible for designating community action agencies. There is no certification or certificate is-

sued to designated community action agencies.

. . . .

12. Since 1968, COCAA has continually been designated, originally by DECA, and since 1986 by ODOC, as a community action agency pursuant to . . . § 5036. It is the designated community agency for prov[id]ing services to Oklahomans in Cleveland, Pottawatomie, Lincoln, Payne and Logan Counties.

13. Consistent with [§ ] 5035, COCAA has been an annual community action agency recipient of federal Community Service Block Grant Funds for which ODOC maintains administrative responsibility. . . .

14. COCAA's purpose and board make-up are consistent with . . . §§ 5034, 5037.

15. ODOC monitors COCAA on, at a minimum, an annual basis.

16. ODOC has never rescinded CO-CAA's designation as a community action agency.

¶ 16 COCAA also attached excerpts from a deposition transcript of William Vaughn Clark (Clark), the Director of Community Services at ODOC. Clark states that COCAA was in existence in Oklahoma, and designated, as a community action agency prior to the formation of ODOC; that ODOC monitors the community action agencies in Oklahoma and "the annual monitoring has not indicated that [COCAA] should be de[-]designated at any point"; that termination of the community action agency status for COCAA has never been recommended; that ODOC has continually recognized COCAA as a community action agency; that qualifying for community block grant dollars by meeting "certain rules," including "the unique formation of their board," constitutes being designated a community action agency; and that there is no formal certificate bestowed by ODOC for designation purposes.

¶ 17 Among other things, COCAA has also attached House appropriations bills which list COCAA as a community action agency to

4. The affidavit is attached to COCAA's supplemental brief in support of summary judgment

filed in July, 2013.

receive funding, and COCAA has attached two community services block grant allocation agreements, between COCAA and ODOC, setting forth the amount of funds to be allocated, the funding period, the source of the funds, and the project description: "Reduce the causes of poverty through advocacy and institutional change, while lessening its effects on low-income people through delivery of direct services."

¶ 18 COCAA has presented ample evidence in support of its assertions that it is a properly established community action agency in Oklahoma; that it has been established as a community action agency in Oklahoma for decades; and that designation as a community action agency does not hinge on the existence of a hypothetical certificate of designation. As indicated above, Spane attempts to dispute COCAA's status as a properly established community action agency by asserting that ODOC has failed to establish an appropriate process for designating community action agencies pursuant to the controlling statutory provisions.

¶ 19 The statutory language upon which Spane relies provides as follows:

A community action agency shall be defined as a public or private nonprofit agency, *designated* by [ODOC].

[ODOC] shall have the right to evaluate existing service areas and community action agencies and, as may be necessary, modify boundaries of the service areas *or rescind designation* in accordance with the provisions outlined in Section 45 of this act so that services will be adequately and efficiently provided.

74 O.S.2011 § 5036 (emphasis added). Section 5038 further provides that, "[t]o ensure statewide delivery of Community Services Block Grant services, [ODOC] shall establish a process to designate community action agencies."

¶ 20 The Legislature chose not to dictate to ODOC precisely how it is to designate, or rescind the designation, of community action agencies. Although the Legislature

has directed ODOC to "establish a process to designate community action agencies," Spane has failed to explain how the series of actions, monitoring, and rule enforcement functions performed by ODOC fails to constitute such a "process." Spane has also failed to explain how this series of actions, which relies, among other things, on annual monitoring of community action agencies, rather than on a "formally entered and recorded" certificate process as proposed by Spane, fails to carry out the legislative intent of the statutory provisions in question. Furthermore, "[s]tatutory construction by agencies charged with the law's enforcement is given persuasive effect especially when made shortly after the statute's enactment." *Cox v. State ex rel. Okla. Dep't of Human Servs.,* 2004 OK 17, ¶ 22, 87 P.3d 607 (footnote omitted).

Great weight is to be accorded the expertise of an administrative agency, and a presumption of validity attaches to the exercise of expertise when the administrative agency is reviewed by a court. A court should not substitute its own judgment for that of an agency, particularly in the area of expertise which the agency supervises.

*Toxic Waste Impact Grp., Inc. v. Leavitt,* 1988 OK 20, ¶ 12, 755 P.2d 626 (footnote omitted).

¶ 21 We conclude that to determine COCAA and, indeed, all other community action agencies, have not been properly established and officially recognized because ODOC, from its inception, has chosen to rely upon an informal, flexible system of designating community action agencies[5] would constitute a needless intrusion into ODOC's area of expertise, especially given the fact that the Legislature has left the degree of formality, and all other details of the designation (and de-designation) process, in the hands of ODOC. Because Spane has not produced any evidence controverting COCAA's status as a long-established community action agency in Oklahoma, and because an informal, flexible process of designation is not inconsistent with the statutes in question, we conclude

---

5. That is, for purposes of summary judgment, and viewing the facts in the light most favorable to Spane, the recognition and designation of community action agencies by ODOC has been informal.

that no genuine disputes of material fact exist in this case as to COCAA's status as a properly established community action agency.

¶ 22 Because there is no genuine dispute as to COCAA's status as a community action agency established pursuant to the applicable statutes, it follows that COCAA is a political subdivision under § 152(11)(n) of the GTCA. Therefore, Spane was required to comply with the notice provisions of the GTCA. Because it is undisputed that Spane failed to do so, the trial court properly determined it lacked jurisdiction over the tort claim of retaliatory discharge set forth in Spane's petition, and it properly granted summary judgment in favor of COCAA. *See Hall v. GEO Grp., Inc.,* 2014 OK 22, ¶ 1, 324 P.3d 399 ("The notice required by the GTCA is a mandatory prerequisite *jurisdictional* requirement to filing a claim for tort damages.") (emphasis added) (footnotes omitted); *Harmon v. Cradduck,* 2012 OK 80, ¶ 28, 286 P.3d 643 ("Notice is a *jurisdictional* prerequisite to bringing an action under the GTCA.") (emphasis added) (citation omitted); *Shanbour v. Hollingsworth,* 1996 OK 67, ¶ 7, 918 P.2d 73 ("[J]udicial power is invoked by the timely filing of the governmental tort claims action pursuant to § 157[.]") (footnote omitted).

## II. *Spane's Application to Supplement the Issues on Appeal*

¶ 23 In January, 2014, during the pendency of this appeal, Spane filed an application to supplement the issues on appeal. Spane seeks to raise an issue for the first time on appeal—whether article 5, section 51 of the Oklahoma Constitution "prohibits the granting of immunity to private entities."[6] Spane requests that this Court grant leave to allow her to file a supplemental brief on this issue, which she asserts "is a new issue which surfaced in" *Coates v. Fallin,* 2013 OK 108, 316 P.3d 924, a case decided during the pendency of this appeal. However, the only issue addressed in *Coates* was whether the Legislature, in enacting the Administrative Act which replaced the Workers' Compensation Code, "acted outside its constitutional authority by enacting a bill containing multiple subjects in violation of the Okla. Const. art. 5, § 57." *Id.* ¶ 2. The *Coates* Court concluded the Legislature did not act outside its authority in this regard.

¶ 24 Spane fails to mention in her application that the citation is contained only in the concurring in part, dissenting in part, separate opinion of one Justice. In that separate opinion, moreover, the constitutional language in question is merely paraphrased: "[T]he legislature is prohibited from granting any exclusive immunities to any association, corporation or individual by Article 5, § 51 of the Oklahoma Constitution." *Coates,* ¶ 10 (Reif, V.C.J., concurring in part, dissenting in part). Clearly, Spane could have raised a constitutional challenge based on article 5, section 51 of the Oklahoma Constitution prior to the date *Coates* was decided, and during the proceedings below.

¶ 25 Regardless, article 5, section 51 of the Oklahoma Constitution "was intended to preserve equality between citizens who are similarly situated." *In re Okla. Dev. Fin. Auth.,* 2004 OK 26, ¶ 20, 89 P.3d 1075 (citing *Kimery v. Pub. Serv. Co. of Okla.,* 1980 OK 187, 622 P.2d 1066). "Thus, the clause may be invoked by a person who suffers injury because the legislature has granted an exclusive right, privilege, or immunity to other persons similarly situated." *City of Moore, Okla. v. Atchison, Topeka, & Santa Fe Ry. Co.,* 699 F.2d 507, 511 (10th Cir.1983). Because COCAA has not been granted any right, privilege, or immunity denied to other similarly situated community action agencies, article 5, section 51 of the Oklahoma Constitution does not apply to the present case.[7] We deny Spane's application.

---

6. Article 5, section 51 of the Oklahoma Constitution provides: "The Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State."

7. We note also the following guidance set forth in the *Coates* case:
   As in all causes involving constitutional challenges to statutory language, we begin with the premise that the [language in question] is constitutional and should be upheld against a constitutional attack unless it is clearly and overtly

## CONCLUSION

¶ 26 Based on our review, we conclude that no genuine disputes of material fact exist and that the trial court properly determined it lacks jurisdiction based on Spane's failure to comply with the notice provisions of the GTCA. Consequently, we affirm.

¶ 27 **AFFIRMED.**

THORNBRUGH, J., and FISCHER, J. (sitting by designation), concur.

inconsistent with the Oklahoma Constitution. In absence of a constitutional defect, we are duty bound to give effect to legislative acts, not to amend, repeal, or circumvent them. We will not exercise authority not vested in this Court by rewriting statutes merely because the legislation does not comport with our concept of prudent public policy.

2013 OK 108, ¶ 2, 316 P.3d 924 (citations omitted).