OSCN Found Document:SPANE v. CENTRAL OKLAHOMA COMMUNITY ACTION AGENCY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 SPANE v. CENTRAL OKLAHOMA COMMUNITY ACTION AGENCY
2015 OK CIV APP 29
346 P.3d 437
Case Number: 112215
Decided: 02/05/2015
Mandate Issued: 03/31/2015
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2015 OK CIV APP 29, 346 P.3d 437

 

SHARON SPANE, Plaintiff/Appellant,
v.
CENTRAL OKLAHOMA 
COMMUNITY ACTION AGENCY, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
POTTAWATOMIE COUNTY, 
OKLAHOMA
HONORABLE JOHN G. CANAVAN, JR., TRIAL JUDGE

AFFIRMED

Mark Hammons, Christine E. Coleman, HAMMONS, GOWENS & HURST, Oklahoma 
City, Oklahoma, for Plaintiff/Appellant
Jeffrey R. Schoborg, CONNER & 
WINTERS, LLP, Tulsa, Oklahoma and Crystal A. Johnson, CONNER & WINTERS, LLP, 
Oklahoma City, Oklahoma, for Defendant/Appellee


DEBORAH B. BARNES, JUDGE:
¶1 Plaintiff/Appellant Sharon Spane (Spane) appeals the trial court's 
Judgment granting the motion for summary judgment of Defendant/Appellee Central 
Oklahoma Community Action Agency (COCAA) on the basis that it lacks subject 
matter jurisdiction because Spane failed to comply with the notice provisions of 
the Governmental Torts Claims Act (GTCA), 51 O.S. 2011 §§ 151-172. Based on our 
review, we affirm.
BACKGROUND
¶2 In February, 2012, Spane filed a petition alleging that in March, 2010, 
her employment with COCAA was wrongfully terminated in retaliation for pursuing 
a workers' compensation claim. In the proceedings that followed,[1] COCAA asserted it is a 
community action agency established pursuant to 74 O.S. 2011 §§ 5035-5040, and, 
therefore, that it constitutes a "political subdivision" under the GTCA. It 
argued that Spane, who was the Deputy Director of COCAA, was therefore required 
to present notice of her claim within one year of the date of termination 
pursuant to the notice requirements of the GTCA. COCAA argued that because Spane 
failed to present such notice, the trial court lacked subject matter 
jurisdiction.
¶3 In response, Spane asserted, among other matters, that COCAA was never 
properly established as a community action agency, and, therefore, the GTCA does 
not apply.
¶4 A hearing was held in August, 2013, on COCAA's motion for summary judgment 
and Spane's motion for partial summary judgment.[2] At the hearing, COCAA discussed the 
evidence it had produced in support of its assertion that it is a properly 
established community action agency, and that it has been so for many years. 
Spane countered that although employees of the Oklahoma Department of Commerce 
(ODOC) may believe COCAA to be a community action agency, and although COCAA may 
receive funds from ODOC as a community action agency, that ODOC has failed to 
properly designate COCAA as a community action agency because it has never 
issued a "formally entered and recorded" designation. Spane implied at the 
hearing, moreover, that no entities in Oklahoma - regardless of whether they 
function as community action agencies and receive block grant funds as community 
actions agencies - are properly established pursuant to 74 O.S. 2011 §§ 
5035-5040 because "there is no document that exists anywhere that reflects that 
[ODOC] designated in terms of issuing a designation to any agencies as Community 
Action Agencies." Spane stated: "The issue is did [ODOC] do what they were 
supposed to."
¶5 COCAA responded at the hearing that

 
 [Spane's] argument is with the state legislature. The state legislature 
 left it to ODOC to establish [its] process. ODOC has spoken. [It has] 
 established that process, and in fact, [it] distributed funds pursuant to 
 those processes consistent with Sections 5035 and through 5040 of Title 
 74.
 But really the bottom line here . . . is [ODOC], an agency of the State 
 of Oklahoma through its general counsel[,] has spoken and said that [COCAA 
 is] designated as a Community Action Agency, and ODOC's corporate legal 
 representative also stated the same exact thing under penalty of 
perjury.
 [Spane is] taking issue with ODOC in whether or not [ODOC is] doing [its] 
 job right, that's not the issue that's before the Court. [Spane] can take 
 that up with the state legislature. As the process stands now everything has 
 been done to satisfy statutorily what is required of ODOC. ODOC has spoken 
 in absolutely unequivocal . . . terms.
¶6 At the end of the hearing, the trial court expressed concern "about the 
fact that the process seems to be very informal for those designations," but 
stated that the statutes "really [do not] say what that process should be. 
Counsel [for COCAA] is correct, there is nowhere in there where it says after 
you get a certificate you are designated, or after we do something in writing 
you are designated." The trial court ultimately determined that "the [GTCA] does 
apply, and therefore, I do not have subject matter jurisdiction." The trial 
court's determination was memorialized in its Judgment filed in September, 
2013.
¶7 From the Judgment, Spane appeals.
STANDARD OF REVIEW
¶8 An order sustaining summary judgment in favor of a litigant presents 
solely a legal matter. Feightner v. Bank of Oklahoma, N.A., 2003 OK 20, ¶ 2, 65 P.3d 624. Questions of law 
mandate application of the de novo standard of review, which affords this 
Court with plenary, independent, and non-deferential authority to examine the 
issues presented. Martin v. Aramark Servs., Inc., 2004 OK 38, ¶ 4, 92 P.3d 96.
¶9 Examination of an order sustaining summary judgment requires Oklahoma 
courts to determine whether the record reveals disputed material facts or 
whether reasonable minds could draw different conclusions from undisputed facts. 
Cranford v. Bartlett, 2001 OK 
47, ¶ 3, 25 P.3d 918. All 
facts and inferences must be viewed in the light most favorable to the party 
opposing summary adjudication. Estate of Crowell v. Bd. of Cnty. Comm'rs of 
Cnty. of Cleveland, 2010 OK 
5, ¶ 22, 237 P.3d 134. If 
the essential fact issues are in dispute, or reasonable minds might reach 
different conclusions in light of the inferences drawn from undisputed facts, 
summary judgment should be denied. Schovanec v. Archdiocese of Okla. 
City, 2008 OK 70, ¶ 39, 188 P.3d 158.
¶10 Finally, "interpretation of statutory law presents a question 
of law and statutes are construed to determine legislative intent in light of 
the general policy and purpose that underlie them." Troxell v. Okla. Dep't of 
Human Servs., 2013 OK 100, ¶ 
4, 318 P.3d 206 (citation 
omitted).[3]
 
ANALYSIS
 
I. COCAA's Status as a Political Subdivision Under the 
GTCA
¶11 The GTCA provides as follows:

 
 A. The State of Oklahoma does hereby adopt the doctrine of sovereign 
 immunity. The state, its political subdivisions, and all of their employees 
 acting within the scope of their employment, whether performing governmental 
 or proprietary functions, shall be immune from liability for torts.
 B. The state, only to the extent and in the manner provided in this act, 
 waives its immunity and that of its political subdivisions. . . 
 .
51 O.S. 2011 § 152.1. The GTCA 
further provides that "[t]he liability of the state or political subdivision 
under [the GTCA] shall be exclusive . . . ." § 153(B).
¶12 The GTCA requires, first of all, that "claims against the state or a 
political subdivision are to be presented within one (1) year of the date the 
loss occurs. A claim against the state or a political subdivision shall be 
forever barred unless notice thereof is presented within one (1) year after the 
loss occurs." § 156(B). The Oklahoma Supreme Court has explained that "the 
notice provisions contained in the GTCA are to protect governmental interests by 
promoting prompt investigation, repair of dangerous conditions, [and] speedy 
settlement of meritorious claims, and to give the governmental entity time to 
meet possible fiscal liabilities." Pellegrino v. State ex rel. Cameron 
Univ., 2003 OK 2, ¶ 17, 63 P.3d 535 (emphasis omitted).
¶13 It is undisputed that Spane failed to comply with the notice provisions 
of the GTCA. In fact, Spane admits that she never filed "a GTCA notice," and 
argues, instead, that "none was required" because COCAA is not a political 
subdivision under the GTCA.
¶14 As indicated above, "'[p]olitical subdivision' means: . . . for purposes 
of [the GTCA] only, any community action agency established pursuant to Sections 
5035 through 5040 of Title 74 of the Oklahoma Statutes[.]" 51 O.S. 2011 § 152(11)(n). In 
support of its assertion that it is a community action agency established 
pursuant to the applicable statutes, COCAA has attached a letter from Donald R. 
Hackler, Jr. (Hackler), the Deputy General Counsel and Public Information 
Officer of ODOC, in which he states:

 
 The service area for [COCAA] was designated by [ODOC] even before I 
 joined the Agency in 1990.
. . . .
Annually [COCAA] receives federal 
 and state funds from our offices to support [its] programs and services. 
 Only community action agencies designated by [ODOC] can receive these 
 funds.
¶15 COCAA has also attached an affidavit of Hackler,[4] in which he states, "I am responsible 
for all legal matters concerning [ODOC], and oversight of federally funded 
programs. Additionally, I am aware of what is required of community action 
agencies related to designation." He further states as follows:

 
 6. In 1964, President Lyndon Johnson signed into law the Economic 
 Opportunity Act that created the nationwide Community Action Network. 
 Subsequently, COCAA, a private, non-profit corporation was formed in 1968. 
 At the time of COCAA's formation, oversight was provided by the Oklahoma 
 Department of Economic and Community Affairs ("DECA").
 7. In 1986, ODOC was created by the Oklahoma legislature. As a result, 
 all powers . . . and obligations of DECA were transferred to ODOC.
 8. Also in 1986, a new set of sections to Title 74 of the Oklahoma 
 Statutes were promulgated dealing with community action agencies. These 
 sections remain in effect.
 9. Section 5036 of Title 74 defines a community action agency as a 
 "public or private nonprofit agency, designated by [ODOC]." Additionally it 
 provides that ODOC has the right to evaluate existing agencies, as may be 
 necessary, and/or rescind designation in accordance with statutory 
 procedures.
 10. ODOC is solely responsible for designating community action agencies. 
 There is no certification or certificate issued to designated community 
 action agencies.
. . . .
12. Since 1968, COCAA has continually been 
 designated, originally by DECA, and since 1986 by ODOC, as a community 
 action agency pursuant to . . . § 5036. It is the designated community 
 agency for prov[id]ing services to Oklahomans in Cleveland, Pottawatomie, 
 Lincoln, Payne and Logan Counties.
 13. Consistent with [§] 5035, COCAA has been an annual community action 
 agency recipient of federal Community Service Block Grant Funds for which 
 ODOC maintains administrative responsibility. . . .
 14. COCAA's purpose and board make-up are consistent with . . . §§ 5034, 
 5037.
 15. ODOC monitors COCAA on, at a minimum, an annual basis.
 16. ODOC has never rescinded COCAA's designation as a community action 
 agency.
¶16 COCAA also attached excerpts from a deposition transcript of William 
Vaughn Clark (Clark), the Director of Community Services at ODOC. Clark states 
that COCAA was in existence in Oklahoma, and designated, as a community action 
agency prior to the formation of ODOC; that ODOC monitors the community action 
agencies in Oklahoma and "the annual monitoring has not indicated that [COCAA] 
should be de[-]designated at any point"; that termination of the community 
action agency status for COCAA has never been recommended; that ODOC has 
continually recognized COCAA as a community action agency; that qualifying for 
community block grant dollars by meeting "certain rules," including "the unique 
formation of their board," constitutes being designated a community action 
agency; and that there is no formal certificate bestowed by ODOC for designation 
purposes.
¶17 Among other things, COCAA has also attached House appropriations bills 
which list COCAA as a community action agency to receive funding, and COCAA has 
attached two community services block grant allocation agreements, between COCAA 
and ODOC, setting forth the amount of funds to be allocated, the funding period, 
the source of the funds, and the project description: "Reduce the causes of 
poverty through advocacy and institutional change, while lessening its effects 
on low-income people through delivery of direct services."
¶18 COCAA has presented ample evidence in support of its assertions that it 
is a properly established community action agency in Oklahoma; that it has been 
established as a community action agency in Oklahoma for decades; and that 
designation as a community action agency does not hinge on the existence of a 
hypothetical certificate of designation. As indicated above, Spane attempts to 
dispute COCAA's status as a properly established community action agency by 
asserting that ODOC has failed to establish an appropriate process for 
designating community action agencies pursuant to the controlling statutory 
provisions.
¶19 The statutory language upon which Spane relies provides as follows:

 
 A community action agency shall be defined as a public or private 
 nonprofit agency, designated by [ODOC].
 [ODOC] shall have the right to evaluate existing service areas and 
 community action agencies and, as may be necessary, modify boundaries of the 
 service areas or rescind designation in accordance with the 
 provisions outlined in Section 45 of this act so that services will be 
 adequately and efficiently provided.
74 O.S. 2011 § 5036 (emphasis 
added). Section 5038 further provides that, "[t]o ensure statewide delivery of 
Community Services Block Grant services, [ODOC] shall establish a process to 
designate community action agencies."
¶20 The Legislature chose not to dictate to ODOC precisely how it is to 
designate, or rescind the designation, of community action agencies. Although 
the Legislature has directed ODOC to "establish a process to designate community 
action agencies," Spane has failed to explain how the series of actions, 
monitoring, and rule enforcement functions performed by ODOC fails to constitute 
such a "process." Spane has also failed to explain how this series of actions, 
which relies, among other things, on annual monitoring of community action 
agencies, rather than on a "formally entered and recorded" certificate process 
as proposed by Spane, fails to carry out the legislative intent of the statutory 
provisions in question. Furthermore, "[s]tatutory construction by agencies 
charged with the law's enforcement is given persuasive effect especially when 
made shortly after the statute's enactment." Cox v. State ex rel. Okla. Dep't 
of Human Servs., 2004 OK 17, 
¶ 22, 87 P.3d 607 (footnote 
omitted).

 
 Great weight is to be accorded the expertise of an administrative agency, 
 and a presumption of validity attaches to the exercise of expertise when the 
 administrative agency is reviewed by a court. A court should not substitute 
 its own judgment for that of an agency, particularly in the area of 
 expertise which the agency supervises.
Toxic Waste Impact Grp., Inc. v. Leavitt, 1988 OK 20, ¶ 12, 755 P.2d 626 (footnote omitted).
¶21 We conclude that to determine COCAA and, indeed, all other community 
action agencies, have not been properly established and officially recognized 
because ODOC, from its inception, has chosen to rely upon an informal, flexible 
system of designating community action agencies[5] would constitute a needless intrusion 
into ODOC's area of expertise, especially given the fact that the Legislature 
has left the degree of formality, and all other details of the designation (and 
de-designation) process, in the hands of ODOC. Because Spane has not produced 
any evidence controverting COCAA's status as a long-established community action 
agency in Oklahoma, and because an informal, flexible process of designation is 
not inconsistent with the statutes in question, we conclude that no genuine 
disputes of material fact exist in this case as to COCAA's status as a properly 
established community action agency.
¶22 Because there is no genuine dispute as to COCAA's status as a community 
action agency established pursuant to the applicable statutes, it follows that 
COCAA is a political subdivision under § 152(11)(n) of the GTCA. Therefore, 
Spane was required to comply with the notice provisions of the GTCA. Because it 
is undisputed that Spane failed to do so, the trial court properly determined it 
lacked jurisdiction over the tort claim of retaliatory discharge set forth in 
Spane's petition, and it properly granted summary judgment in favor of COCAA. 
See Hall v. GEO Grp., Inc., 2014 OK 22, ¶ 1, 324 P.3d 399 ("The notice required 
by the GTCA is a mandatory prerequisite jurisdictional requirement to 
filing a claim for tort damages.") (emphasis added) (footnotes omitted); 
Harmon v. Cradduck, 2012 OK 
80, ¶ 28, 286 P.3d 643 
("Notice is a jurisdictional prerequisite to bringing an action under the 
GTCA.") (emphasis added) (citation omitted); Shanbour v. Hollingsworth, 
1996 OK 67, ¶ 7, 918 P.2d 73 ("[J]udicial power is 
invoked by the timely filing of the governmental tort claims action pursuant to 
§ 157[.]") (footnote omitted).
II. Spane's Application to Supplement the Issues on 
Appeal
¶23 In January, 2014, during the pendency of this appeal, Spane filed an 
application to supplement the issues on appeal. Spane seeks to raise an issue 
for the first time on appeal - whether article 5, section 51 of the Oklahoma 
Constitution "prohibits the granting of immunity to private entities."[6] Spane requests 
that this Court grant leave to allow her to file a supplemental brief on this 
issue, which she asserts "is a new issue which surfaced in" Coates v. 
Fallin, 2013 OK 108, 316 P.3d 924, a case decided during 
the pendency of this appeal. However, the only issue addressed in Coates 
was whether the Legislature, in enacting the Administrative Act which replaced 
the Workers' Compensation Code, "acted outside its constitutional authority by 
enacting a bill containing multiple subjects in violation of the Okla. Const. 
art. 5, § 57." Id. ¶ 2. The Coates Court concluded the Legislature 
did not act outside its authority in this regard.
¶24 Spane fails to mention in her application that the citation is contained 
only in the concurring in part, dissenting in part, separate opinion of one 
Justice. In that separate opinion, moreover, the constitutional language in 
question is merely paraphrased: "[T]he legislature is prohibited from granting 
any exclusive immunities to any association, corporation or individual by 
Article 5, § 51 of the Oklahoma Constitution." Coates, ¶ 10 (Reif, 
V.C.J., concurring in part, dissenting in part). Clearly, Spane could have 
raised a constitutional challenge based on article 5, section 51 of the Oklahoma 
Constitution prior to the date Coates was decided, and during the 
proceedings below.
¶25 Regardless, article 5, section 51 of the Oklahoma Constitution "was 
intended to preserve equality between citizens who are similarly situated." 
In re Okla. Dev. Fin. Auth., 2004 OK 26, ¶ 20, 89 P.3d 1075 (citing Kimery v. 
Pub. Serv. Co. of Okla., 1980 OK 
187, 622 P.2d 1066). "Thus, 
the clause may be invoked by a person who suffers injury because the legislature 
has granted an exclusive right, privilege, or immunity to other persons 
similarly situated." City of Moore, Okla. v. Atchison, Topeka, & Santa Fe 
Ry. Co., 699 F.2d 507, 511 (10th Cir. 1983). Because COCAA has not been 
granted any right, privilege, or immunity denied to other similarly situated 
community action agencies, article 5, section 51 of the Oklahoma Constitution 
does not apply to the present case.[7] We deny Spane's application.
CONCLUSION
¶26 Based on our review, we conclude that no genuine disputes of material 
fact exist and that the trial court properly determined it lacks jurisdiction 
based on Spane's failure to comply with the notice provisions of the GTCA. 
Consequently, we affirm.

¶27 AFFIRMED.

THORNBRUGH, J., and FISCHER, J. (sitting by designation), concur.
 

FOOTNOTES

[1] 
Although procedural issues will be addressed, if necessary, in the analysis 
section of this Opinion, a detailed recitation of the already lengthy procedure 
of this case is unnecessary.

[2] Spane 
requested partial summary judgment, asserting "that the absence of a formally 
entered and recorded designation is fatal to [COCAA's] GTCA immunity 
defense."

[3] In 
Estes v. ConocoPhillips Co., 2008 OK 21, 184 P.3d 518, the Oklahoma Supreme 
Court stated:
The primary goal of statutory interpretation is to ascertain and follow the 
intent of the Legislature. Where a statute's meaning is ambiguous or unclear, we 
employ rules of statutory construction to give the statute a reasonable 
construction that will avoid absurd consequences. It is important in construing 
the Legislative intent behind a word to consider the whole act in light of its 
general purpose and objective, considering relevant portions together to give 
full force and effect to each. A statute will be given a construction, if 
possible, which renders every word operative, rather than one which makes some 
words idle and meaningless. We presume that the Legislature expressed its intent 
and intended what it expressed, and statutes are interpreted to attain that 
purpose and end, championing the broad public policy purposes underlying 
them.
Id. ¶ 16 (footnotes omitted).

[4] The 
affidavit is attached to COCAA's supplemental brief in support of summary 
judgment filed in July, 2013.

[5] That 
is, for purposes of summary judgment, and viewing the facts in the light most 
favorable to Spane, the recognition and designation of community action agencies 
by ODOC has been informal.

[6] Article 
5, section 51 of the Oklahoma Constitution provides: "The Legislature shall pass 
no law granting to any association, corporation, or individual any exclusive 
rights, privileges, or immunities within this State."

[7] We note 
also the following guidance set forth in the Coates case:
As in all causes involving constitutional challenges to statutory language, 
we begin with the premise that the [language in question] is constitutional and 
should be upheld against a constitutional attack unless it is clearly and 
overtly inconsistent with the Oklahoma Constitution. In absence of a 
constitutional defect, we are duty bound to give effect to legislative acts, not 
to amend, repeal, or circumvent them. We will not exercise authority not vested 
in this Court by rewriting statutes merely because the legislation does not 
comport with our concept of prudent public policy.
2013 OK 108, ¶ 2 (citations 
omitted).
 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 20, 755 P.2d 626, 59 OBJ 599, Toxic Waste Impact Group, Inc. v. Leavitt
Discussed
 2001 OK 47, 25 P.3d 918, 72 OBJ 1792, CRANFORD v. BARTLETT
Discussed
 2003 OK 2, 63 P.3d 535, PELLEGRINO v. STATE EX REL. CAMERON UNIVERSITY
Discussed
 2003 OK 20, 65 P.3d 624, FEIGHTNER v. BANK OF OKLAHOMA, N.A.
Discussed
 2004 OK 17, 87 P.3d 607, COX v. STATE ex rel. DEPT. OF HUMAN SERVICES
Discussed
 2004 OK 26, 89 P.3d 1075, IN THE MATTER OF THE APPLIC. OF THE OKLA. DEVELOPMENT FINANCE AUTHORITY
Discussed
 2004 OK 38, 92 P.3d 96, MARTIN v. ARAMARK SERVICES, INC.
Discussed
 1996 OK 67, 918 P.2d 73, 67 OBJ 1844, Shanbour v. Hollingsworth
Discussed
 2008 OK 21, 184 P.3d 518, ESTES v. CONOCOPHILLIPS CO.
Discussed
 2008 OK 70, 188 P.3d 158, SCHOVANEC v. ARCHDIOCESE OF OKLAHOMA CITY
Discussed
 2010 OK 5, 237 P.3d 134, ESTATE OF CROWELL v. BOARD OF COUNTY COMMISSIONERS
Discussed
 2012 OK 80, 286 P.3d 643, HARMON v. CRADDUCK
Discussed
 2013 OK 100, 318 P.3d 206, TROXELL v. OKLAHOMA DEPT. OF HUMAN SERVICES
Discussed
 2013 OK 108, 316 P.3d 924, COATES v. FALLIN
Discussed at Length
 2014 OK 22, 324 P.3d 399, HALL v. THE GEO GROUP, INC
Discussed
 1980 OK 187, 622 P.2d 1066, Kimery v. Public Service Co. of Oklahoma
Discussed
Title 51. Officers
 Cite
Name
Level

 51 O.S. 152, Definitions
Cited
 51 O.S. 152.1, Adoption of Doctrine of Sovereign Immunity
Cited
Title 74. State Government
 Cite
Name
Level

 74 O.S. 5036, Community Action Agency - Right of Department of Commerce to Evaluate Service Areas and Community Action Agencies
Cited